ELIZA K. BACON *vs.* ALLEN H. HOOKER & another.

Middlesex. December 16, 1898. — June 30, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Mortgage of Personal Property — Agency — Tender — Evidence — Assault — Conversion — Action.*

In an action for the conversion of personal property, on which the defendant held a mortgage, if the evidence tends to show that A. and several other persons were sent by the defendant to the plaintiff's house to foreclose the mortgage, and that A. was also instructed to deliver to the plaintiff a notice of the foreclosure, and it also appears that A. had been seen at work in the defendant's place of business, though the witness could not tell what kind of work he was doing, the evidence fails to show that A. was an agent of the defendant to whom a tender properly could be made, and evidence offered by the plaintiff for the purpose of proving that a tender was made to A. is rightly excluded.

A count for an assault by " the defendant," who held a mortgage on personal property in the plaintiff's house, is not supported by evidence that A., who was sent by the defendant to the house to foreclose the mortgage, assaulted the plaintiff,

the defendant not being present, and there being nothing to show that he had commanded or authorized the assault.

If a mortgage of a piano is foreclosed and the piano taken away from the mortgagor's house by men sent there by the mortgagee for that purpose, evidence that on the day after such foreclosure the mortgagor tendered to the mortgagee a sum sufficient to pay the balance due on the piano and the expenses of the foreclosure, and that he refused the tender and subsequently sold the piano, will sustain an action for the conversion of the piano.

TORT. The declaration contained three counts, the first being for trespass upon the plaintiff's premises, the second for an assault by " the defendants " upon her, and the third for conversion of one pianoforte, alleged to be her property. Trial in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions in substance as follows.

It was admitted by the defendants, who did business under the name of Loan Fund Company, that on October 24, 1895, the plaintiff and her husband, George H. Bacon, borrowed from the defendants the sum of one hundred dollars, and made and executed to them a chattel mortgage and note in the ordinary form, covering a part of her household goods and the pianoforte mentioned in the declaration, payable in one month, with interest at the rate of five dollars per month, and five dollars for making and securing the loan.

The defendant Hooker testified that the defendants had received on the mortgage mentioned twenty-one payments of five dollars each, the first of which payments was made on November 22, 1895, and the last on August 17, 1897; that on the day last mentioned, just after the payment had been made, he gave the mortgage and note to one McEvoy and sent three teamsters and a man named Thomas with McEvoy to the plaintiff's dwelling-house to foreclose the mortgage; that he on the same day instructed McEvoy to deliver to the plaintiff a notice in writing of the intention to foreclose the mortgage and sell the property by auction on August 25; that McEvoy took the piano out of the plaintiff's house; and that the piano was sold, but that he did not sell it on the day fixed for the sale in the notice.

John A. Lincoln testified that on August 17, 1897, in consequence of a request made by the plaintiff, he called at her house and found there McEvoy and Thomas and the teamsters mentioned, before the piano was removed from the house; that

he knew McEvoy and had seen him in the defendants' place of business more or less for the last ten or twelve years, but could not tell what kind of work he was doing; and that, while at the plaintiff's house, and before the piano was removed, he talked with McEvoy ; and in answer to the question, " What did you say to him ? " the witness answered, " I made him a tender." This answer was excluded; and the plaintiff excepted.

The witness testified further that he took six ten-dollar treasury notes out of his pocket and counted them and offered them to McEvoy and he would not accept them; that after that he saw McEvoy take the piano and get on to a team and go away with it; that he saw him serve a paper, that is, the written notice above mentioned ; that McEvoy and the plaintiff had some argument there between themselves, and he pushed her a little out of the way, taking the piano.   The plaintiff then asked him, " State what he said, if anything, before he pushed her." This question was objected to, and the judge excluded it, ruling that he would exclude any evidence offered of an assault committed by any person other than the defendants.

The witness further testified that the value of the piano at the time of the taking was $150.

The plaintiff testified that she borrowed of the defendants the $100 mentioned, and she had paid $105 ; that she knew McEvoy by sight ; that she had seen him in the office of the defendants, but did not notice that he was doing anything in particular while she was there ; that he came to her house on August 17, 1897, and pulled a paper out of his pocket, which was the mortgage, and said he came to foreclose the mortgage, and he took the piano ; that before he took the piano away, she saw Lincoln with $60 in his hand, which was extended towards McEvoy, and Lincoln said that he wanted him to cancel the note and mortgage.

George H. Bacon, the husband of the plaintiff, testified for the plaintiff that he signed the mortgage and note ; that he had made a greater part of the payments mentioned, and there was paid in all $105 ; that the piano belonged to the plaintiff ; that in consequence of what he had learned on August 17, and of the notice mentioned, he called at the defendants' place of business on the next day, and saw Hooker ; that he had $60 in his

pocket, and he tendered it to Hooker, who refused it, saying that he wanted $100, and that he would take nothing else.

It was agreed that under the laws of 1888 and 1892, there would be a balance due on August 17, 1897, amounting to $11.47; and that the $60 tendered would cover all expenses of any foreclosure proceedings and the balance mentioned.

At the close of the evidence offered by the plaintiff, the judge ruled that she was not entitled to maintain her action; and directed the jury to return a verdict for the defendants. The plaintiff alleged exceptions.

*P. B. Kiernan*, for the plaintiff.

*S. R. Cutler*, for the defendants.

MORTON, J.   The testimony tended to show that McEvoy and three teamsters and a man by the name of Thomas were sent out to the plaintiff's house to foreclose the mortgage, and that McEvoy was also instructed by one of the defendants to deliver to the plaintiff a notice of the foreclosure. It also appeared that McEvoy had been seen at work in the defendants' place of business though the witness could not tell what kind of work he was doing. This was the substance of the testimony as to McEvoy's authority to act in regard to the matter of tender. If the plaintiff relied on the tender to McEvoy, the burden was on her to show that the tender properly could be made to him. The evidence failed to show that he was an agent to whom a tender properly could be made and the testimony offered by the plaintiff for the purpose of proving that a tender was made to him was rightly excluded. *Tuthill* v. *Morris*, 81 N. Y. 94. *Bingham* v. *Allport*, 1 N. & M. 398.

There was no evidence, from the course of business or otherwise, that he had any authority to receive the money for the defendants, or that he was their agent except for the specific purpose for which he was sent to the plaintiff's house.

The count for an assault imported a direct assault by the defendants. At the trial it appeared that neither of them was present, and there was nothing tending to show that either of them had commanded or authorized the assault. As the count stood, therefore, the evidence that was offered of an assault by McEvoy was incompetent. If the plaintiff sought to hold the defendants because of an assault committed by McEvoy while

acting within the scope of his authority as their servant, it should have been so alleged. See *McCann* v. *Tillinghast,* 140 Mass. 327 ; *M'Manus* v. *Crickett,* 1 East, 106 ; *Morley* v. *Gaisford,* 2 H. Bl. 442. Whether the assault was justifiable it is not necessary to consider. See *Lambert* v. *Robinson,* 162 Mass. 34.

We think that on the remaining count, which was for conversion of the piano, there was error on the part of the court in directing a verdict for the defendants. The count was a general one, and not confined to any particular act of conversion. Under such a declaration there is no rule of law of which we are aware which limits the plaintiff's proof to one act of conversion. It appeared that on the day after McEvoy went to the plaintiff's house, her husband went into the defendants' place of business and tendered on her behalf $60 in payment, but the defendant Hooker said that he would not take less than $100 in payment of the mortgage. It was after this that the piano was sold by the defendants. It was agreed that, under St. 1888, c. 388, and St. 1892, c. 428, the balance due on August 17, 1897, the date of the last payment and the day on which McEvoy and the teamsters and Thomas were sent to the plaintiff's house to remove the piano, was $11.47, and that the $60 tendered would cover all expenses of foreclosure and the balance due as aforesaid. The effect of the tender was, if not to discharge the lien of the mortgage, at least to render the subsequent sale of the piano by the defendants clearly tortious. *Schayer* v. *Commonwealth Loan Co.* 163 Mass. 322.             *Exceptions sustained.*