FLORENCE S. MARSTON *vs.* BOSTON PUBLISHING COMPANY.

Middlesex.    March 3, 1930. — May 26, 1930.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Agency,* Existence of relation.  *Evidence,* Extrinsic affecting writings.

At the trial of an action of tort against a corporation, it appeared that the defendant and the owner of a dwelling house executed a contract in writing for the exhibition thereof to the public for a week, whereby the defendant agreed to sell and have published certain advertising matter and to put into the house such merchandise and salesmen as it deemed necessary; and the owner agreed to pay certain sums to the defendant, to provide gas, water and electricity and to have the house and grounds clean; that the contract contained a provision, followed by the words within parentheses, "cross out if not wanted," that the defendant would provide an attendant every day upon the payment of a certain further sum by the owner; that, during the week of the exhibition, the house was in charge of a hostess, whose duty, among others, was to see that it was properly lighted; that the plaintiff, who went to the house for the purpose of inspecting it, sustained injuries when he fell down an unlighted stairway; and that the contract was negotiated on behalf of the defendant by an employee whose duties were merely to negotiate for the exhibitions and to sell the advertising. Such employee testified that, in the course of the negotiations, the owner stated to him that he did not wish the defendant to hire the hostess, but would attend to that himself; that he overlooked striking out the provision in the contract regarding an attendant; and that subsequently he had nothing to do with hiring the hostess. The owner testified, his testimony being contradicted by the defend-

ant's employee, that the employee told him that the contract required the defendant to furnish the hostess; that the employee suggested her name and arranged an appointment with her; and that he stated that the owner could pay her directly instead of paying the defendant. The hostess testified that she was hired and paid by the owner and that she did not receive any instructions from or talk with any representatives of the defendant. The judge denied a motion by the defendant that a verdict be ordered in its favor. *Held,* that

(1) The conversations between the owner and the defendant's employee were governed by the terms of the contract in writing;

(2) Even if the employee had authority to engage the hostess in behalf of the defendant, he could do so only in accordance with the contract, which did not require the defendant to provide an attendant except upon being paid a certain sum for that service: there was nothing to show that the employee had authority to waive a material term of the contract;

(3) The evidence did not warrant a finding that the employee had authority from the defendant to engage a hostess, or that he was held out by the defendant as having that authority, or that in that respect the defendant ratified any act by him or by the owner in its behalf;

(4) A finding was not warranted that the defendant employed the hostess or assumed the duty of lighting the stairs; and its motion should have been allowed.

TORT. Writ dated July 13, 1927.

Material evidence at the trial in the Superior Court before *Macleod,* J., is stated in the opinion. The judge denied a motion by the defendant that a verdict be ordered in its favor. The jury found for the plaintiff in the sum of $4,991.58. The defendant alleged exceptions.

*C. F. Choate,* for the defendant.

*A. F. Bickford,* for the plaintiff.

SANDERSON, J. This is an action of tort to recover for personal injuries sustained by the plaintiff in falling down stairs in a house on Montvale Road, Newton, owned by Bertha C. Rose and alleged to be occupied and used by the defendant for the purpose of conducting an exhibition under the title "Better Homes Exhibit." The negligence alleged is the failure to keep electric lights burning in a hallway of the house, and the failure to guard a dark and narrow staircase or to warn the plaintiff of its presence. The plaintiff also brought an action against Bertha C. Rose and her husband to recover damages for the same injury.

The cases were tried together.  The plaintiff at the close of her evidence discontinued her action against the husband, and the jury found for the defendant in the action against Mrs. Rose and for the plaintiff in her action against Boston Publishing Company, which will be referred to as the defendant.  The defendant excepted to the admission and exclusion of evidence, to the refusal of the judge to direct a verdict in its favor, to the refusal to make certain rulings and to portions of the charge.

The owner's husband acting for her entered into a contract with the defendant whereby it agreed, provided the furniture could be obtained, to run a Better Homes Exhibit on the premises on November 21, 1926, to be open for inspection by the public between 2 and 9 P.M. from November 21 to November 28 inclusive.  The owner was to pay the defendant a specified sum in cash for the loan of draperies and a further sum at a later date for advertising received.  This agreement provided that the defendant might put into the home and garage such merchandise and salesmen as were deemed by it to be necessary.  The contract contained in numbered paragraphs in parallel columns certain obligations undertaken by the parties.  Among those assumed by the defendant were the loaning and connecting of two flood lights and the publication of as much advertising as could be sold to subcontractors and merchandisers — the advertising to run the opening day.  In one of the paragraphs the defendant agreed that it would have a man or woman in attendance from 2 to 9 P.M. every day upon payment of $25 in addition to the other payments thereinbefore specified.  Following this provision were the words within parentheses "cross out if not wanted."  By the terms of the agreement the obligations undertaken in behalf of the owner were to pay for gas and current used for all lights, to have the house, windows and grounds clean and neat, to have someone on the property to open and close the home daily providing there is no "Herald" representative, to have electric and gas meters installed and lighting fixtures and lamps put in working order and to have water turned on.  In pur-

suance of this agreement the defendant obtained advertising for the Boston Herald, and the owners of the real estate and furnishings exhibited gained the advantage of having their property shown to possible purchasers. An advertisement of the Better Homes Exhibit at the Rose house appeared in the Boston Herald on November 21, 1926, which also contained a notice that the home was completely furnished with all the latest modern electrical appliances and would be open for public inspection daily November 21 to the 28th inclusive, from 2 to 9 P.M.

In response to the announcement in the "Herald" the plaintiff, in company with her sister, went to the house at about 4 P.M. on November 25, 1926, for the purpose of inspecting it. She was greeted and asked to register her name by a woman named Fitzgerald, who was performing the functions of a "hostess." When passing through a rear hall on the second floor the plaintiff was injured by falling down a stairway. There was no window in this hall and such natural light as was there came from windows in other rooms. At the time of the accident, which could have been found to have occurred at about the time of sunset on a cloudy afternoon, the electric light in the ceiling of the rear hall had not been turned on.

The liability of the defendant, if any, must rest upon proof that it was in control of the building with the duty to see that the home was so lighted as to be reasonably safe for invitees. *Wright* v. *Sears,* 242 Mass. 292. *Grasselli Dyestuff Corp.* v. *John Campbell & Co.* 259 Mass. 103, 107, 108. *Oxford* v. *Leathe,* 165 Mass. 254. The plaintiff was not a party to the contract between the defendant and Rose and this was material to the case only in so far as it bore on the question whether the defendant had a duty to see that the rear hall was properly lighted. *Brown* v. *Winthrop,* 270 Mass. 322, 325. Upon the evidence the jury could have found that Mrs. Fitzgerald was the person in charge of the house during the hours of the exhibit, with the duty of maintaining lighting conditions therein. If it be assumed that she was negligent in failing to have the electric light in the rear hall turned on before the acci-

dent, there was no evidence upon which the defendant's liability could be predicated unless the relationship of employer and employee existed between the defendant and her. It did not assume control of lighting the premises through any agency unless through that of Mrs. Fitzgerald. See *McLeod* v. *Rawson,* 215 Mass. 257, 259. It has not been contended that any other person at the exhibit was agent of the defendant. The testimony concerning her employment came from the witnesses Swift, Rose and Mrs. Fitzgerald.

Swift, who alone conducted the negotiations leading up to the contract and signed in behalf of the defendant, brought with him when he first interviewed Rose the proposed agreement in printed form. He testified that when he asked Rose about the provision for an attendant Rose said he did not want the defendant to supply a hostess, but would take care of that himself; that the reason why this provision was not struck out of the contract was his own negligence; that as an employee in the Better Homes Exhibit department of the "Herald" he was detailed by the man in charge of that department to sell advertising for exhibitors, to appear in the "Herald" on the opening day; that another employee was detailed to arrange with dealers for the furnishings; that a part of Swift's work was to find people who had houses for sale and to interest them in an exhibit; that at his solicitation Rose signed the contract involved in this action and agreed to pay the defendant the amounts stated therein for the advertising his house would receive; that when the contract was signed Swift was delegated to get the advertising from exhibitors; that his entire work was selling exhibits and advertising in connection with them; that one copy of the contract when executed was sent to the man in charge of the department; that the owner had nothing to do with the exhibit beyond the requirement of the contract relating to the owner's obligations; that the defendant held itself responsible for the furnishings, meaning that it had the duty to obtain them, not the responsibility for their safe keeping; that the exhibitors had the responsibility of looking out for the

furnishings which they placed in the house; that it was not his duty to hire a hostess, and he had nothing to do with making arrangements for hiring one in this case; that if a hostess were to be furnished in any case he would inform the manager of the fact and leave the arrangements with him; and that during the entire period of his employment he had hired no hostess.

Rose, the owner's husband who executed the agreement in her behalf, testified that other than what he did with Swift he had nothing to do with running the exhibit; that when the contract was signed Swift told him it called for a hostess to be furnished by the defendant, and gave him the name of Mrs. Fitzgerald as available for that position, and by telephone arranged to have her make an appointment with Rose so that he might give her instructions as to selling the home and answering inquiries concerning it; that Swift said she would act in that capacity for $25 a week; that the defendant intended to pay her that price, but that as it made nothing out of this part of the transaction Rose could pay her directly instead of paying the "Herald." The testimony as to this conversation was contradicted by Swift. The next day Mrs. Fitzgerald called on Rose and he gave her instructions as to her duties pertaining to the sale of the house, and later he paid her $25 for her services for the entire exhibit. No payment for a hostess or an attendant was made to the defendant. There was no evidence that Mrs. Fitzgerald was employed by the defendant unless that appears from what Swift said and did in the presence of Rose, and what afterwards occurred between Rose and Mrs. Fitzgerald.

Mrs. Fitzgerald testified that in 1926 she was in different homes with the defendant's exhibit, but in every case she had been paid by the owners or the exhibitors; that Rose when asking her to be hostess said that the defendant had recommended her to come and take charge of the home, and wanted her to come the day of the opening; that Rose said it would be all right if she came late on the opening day; that she never received any instructions from anybody representing the defendant in regard to the house and

never saw or talked with any of its representatives concerning it; that such instructions as she received came from Rose; that she was paid by him after the exhibit opened; that she received a key to the house from the owner or her agent, which she used during the exhibit; that an employee of Rose assisted in turning off the lights; and that after she arrived on the opening day she was in attendance at all times during the exhibit.

Both Swift and Rose testified that they had only two interviews with each other and that the agreement was signed at the second; and upon the evidence the only time when the conversation with Swift, to which Rose testified, could have taken place was before the contract was executed or at the interview when it was executed. It is a rule of substantive law that all previous or contemporaneous conversations inconsistent with the terms of a written agreement are superseded by and merged in it. *Mears* v. *Smith,* 199 Mass. 319. *Martin* v. *Jablonski,* 253 Mass. 451, 455. *Snider* v. *Deban,* 249 Mass. 59. By the terms of the contract the defendant was required to have an attendant at the exhibit only in case it were paid the stipulated amount for that service. *Welch* v. *Matthews,* 98 Mass. 131. Even if it were assumed that Swift had been given authority to engage a hostess for the exhibit, there is nothing to indicate that he could do so except upon the terms and conditions stated in the contract, but we are of opinion that the evidence did not justify a finding that he had such authority. The admission that he had authority to execute the contract for the defendant, when considered in connection with the terms of that contract and the testimony relating to his position and duties, does not go far enough to justify an inference that he had either direct or apparent authority to hire a hostess, or to authorize Rose to engage one in behalf of the defendant, or to waive any material term of the contract. *Price* v. *Moore,* 158 Mass. 524. *Bacon* v. *Hooker,* 173 Mass. 554. *Wojcik* v. *Cadillac Berkshire Co.* 256 Mass. 317. There was no holding out of Swift as an agent having authority to engage a hostess and no evidence of ratification of any act in that matter purporting to have been done by

him or by Rose in behalf of the defendant. Upon this ground the plaintiff has failed to maintain the burden of proving that the defendant had employed Mrs. Fitzgerald to be in attendance, or had assumed the responsibility of keeping the rear hallway lighted. The motion for a directed verdict should have been allowed. The conclusion here reached makes it unnecessary to consider other exceptions argued.

*Exceptions sustained.*
*Judgment for the defendant.*