STATE STREET TRUST COMPANY *vs.* LAWRENCE MANU-
FACTURING COMPANY.

Suffolk.  November 15, 1932. — November 6, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Bailment.  Pledge.  Bona Fide Purchaser.  Warehouse Receipt.  Estoppel. Conversion.  Damages, In tort.  Practice, Civil, Findings by judge.*

A document, given in the ordinary course of business by a purchaser of cotton to the seller, entitled "Warehouse Receipt," bearing the word "Negotiable" printed across the face, and stating: "Received, in warehouse of . . . [the name of the buyer] (Hereinafter called the buyer) from . . . [name of the seller] (Hereinafter called the seller) . . . [certain] bales cotton . . . deliverable to said seller, or order, upon surrender of this receipt, properly endorsed," where the buyer did not maintain a public warehouse, but stored the cotton in a store-house used in connection with his manufacturing business, was a document of title within the meaning of G. L. (Ter. Ed.) c. 106, §§ 29, 65, and the buyer was a bailee of the cotton within the description of § 29.

In an action of contract or tort by a bank against the buyer of the cotton above mentioned, it appeared that the defendant agreed to pay the seller a stipulated price for the cotton on or before a certain date, received delivery of the cotton and gave the seller the "warehouse receipt" above described; that thereafter the seller informed the plaintiff of the sale to the defendant, borrowed money from the plaintiff, gave it his note for the loan, and delivered to it as collateral security for the note the receipt indorsed by him in blank; that subsequently the defendant, unknown to the plaintiff, without requesting or obtaining the receipt, and not knowing that it had passed out of the seller's possession, paid to the seller the purchase price of the cotton and then withdrew the cotton from the storehouse and manufactured it; that the seller became a bankrupt without having paid his note to the plaintiff; that the pledge of the receipt by the seller was not unusual; and that the defendant understood that the seller could and might use the receipt in that manner. A judge hearing the action found that the plaintiff relied upon the seller to pay his note to it and expected the defendant not to pay the seller without the surrender of the receipt to the defendant; that the usual course of business was for a buyer to pay the seller and then for the seller to pay the bank, take the receipt from the bank and send it to the buyer; and that the plaintiff expected that course. The plaintiff alleged in the declaration in substance that the defendant converted the cotton. *Held*, that

(1) The findings by the trial judge were not inconsistent one with another: they meant that the defendant would demand surrender of the receipt on payment to the seller and would pay only against surrender of receipt or would consider payment unconditional only after the receipt had been returned;

(2) The receipt was a negotiable document which transferred title to the cotton to the plaintiff when the receipt was pledged to it by the seller;

(3) The plaintiff did not have notice of any facts which would prevent its being a *bona fide* purchaser of the cotton; the plaintiff was such a purchaser notwithstanding the mere circumstance that it knew that the defendant was a purchaser of the cotton from the seller;

(4) In the circumstances, the defendant was estopped to assert against the plaintiff defences which might be available against the seller, and to deny liability for loss caused to the plaintiff as the indorsee of the receipt by reliance upon his own representations;

(5) The plaintiff was entitled to recover the fair market value of the cotton on the date when it was used by the defendant, but not the amount of the seller's indebtedness to it.

CONTRACT OR TORT.   Writ dated October 15, 1930.

The declaration contained allegations, in one count that the defendant, without the consent of the plaintiff and without the surrender of the receipt described in the opinion, "delivered, used or otherwise disposed of" the cotton

mentioned in the receipt, "all to the plaintiff's great damage," and in another count that the defendant converted such cotton; both counts being for the same cause of action.

The action was heard in the Superior Court by *Pinanski*, J., without a jury. It appeared that the note given to the plaintiff by P. T. Jackson Company and described in the opinion was for $10,778.70. Material evidence and findings are stated in the opinion. The judge found for the plaintiff in the sum of $10,778.70. The defendant alleged exceptions.

*A. Marshall,* (*E. A. Howe* with him,) for the defendant.
*S. H. Batchelder & J. M. Gavin,* for the plaintiff.

RUGG, C.J. The plaintiff by this action of tort or contract seeks to recover from the defendant the value of one hundred bales of cotton. The case was tried by a judge without a jury, who made findings of fact and rulings of law and found for the plaintiff. The material facts are these: The defendant, a manufacturer of cotton goods, in January, 1930, executed a document called a "sale note" with P. T. Jackson Company (a corporation then engaged in Boston as cotton merchants or brokers and hereafter called the broker) by the terms of which it purchased from the broker one hundred bales of described cotton at a stipulated price to be paid on or before March 10, 1930. The sale note was signed by the broker and the defendant, an invoice was sent to the defendant, and the cotton was shipped and was received by the defendant on or about January 23, 1930. A document dated at Lowell, Massachusetts, on January 23, 1930, containing a detailed description of the bales of cotton, signed by the defendant, was returned to the broker. It was entitled "WAREHOUSE RECEIPT" with the word "NEGOTIABLE" printed across its face. It will hereafter be referred to as the receipt. So far as here material it was in these words: "RECEIVED, in warehouse of LAWRENCE MFG. COMPANY (Hereinafter called the buyer) from P. T. JACKSON COMPANY (Hereinafter called the seller) ONE HUNDRED (100) bales cotton Numbered and marked as in margin, deliverable to said

seller, or order, upon surrender of this receipt, properly endorsed, except that any actual payment of freight charges by the buyer shall be a lien upon said cotton for the amounts paid. This cotton is covered with insurance, while in store for account of whom it may concern. Storage and labor free." The defendant did not maintain a public warehouse but stored the cotton in one of its storehouses used in connection with its manufacturing business. On January 30, 1930, the broker, desiring to negotiate a loan with the plaintiff, offered this receipt as collateral therefor, at the same time exhibiting to it the sale note and the invoice in order to satisfy it that the cotton referred to in the receipt had been shipped to the defendant, a company of good credit, and to show the price agreed upon. The plaintiff, relying upon the statement in the receipt, "deliverable to said seller, or order, upon surrender of this receipt, properly endorsed," loaned to the broker a sum equal to the provisional price of the cotton. The broker delivered to the plaintiff the receipt indorsed in blank, also the sale note and the invoice, and executed and delivered its promissory note payable on demand. The note read in part: "having deposited with the said Company as general collateral security for the payment of this and any other liability of the undersigned, direct or indirect, joint or several, already existing or which may hereafter arise, in favor of said Company, the following property, viz.: Covering 100 bales of cotton marked ISBD etc., for account of the Lawrence Manufacturing Company, Lowell, Mass." On or about March 12, 1930, the defendant paid the broker the purchase price of the cotton but did not in fact receive or request the return of the receipt. The plaintiff had no knowledge of this payment until three months or more later. The broker did not then or at any other time pay to the plaintiff its note and has never requested a return of the receipt or other documents relating to the sale of the cotton. The plaintiff has never received any payment on account of the note of the broker and still holds and relies upon the receipt as security therefor. The broker became insolvent and is now bankrupt. Prior to July, 1930, no notice of the trans-

actions between the plaintiff and the broker, or of the indorsement and delivery of the receipt to the plaintiff, had been given to the defendant and it had no knowledge that the warehouse receipt had passed out of the possession of the broker. At various times after March 12, 1930, the defendant withdrew the cotton from its storehouse and used it in its business of manufacturing. On July 25, 1930, the plaintiff sent the defendant a letter stating that it held the receipt and intended to hold the defendant responsible for any loss resulting from the destruction of its collateral. The defendant denied liability. On October 9, 1930, the plaintiff made formal tender of the receipt and demand for the cotton, which was refused.

The assistant treasurer of the defendant, who signed the receipt, testified that he knew that brokers frequently pledged papers representing cotton in the defendant's storehouse as security for credits, and that there was nothing unusual in this practice. An executive officer of the broker testified that it was not the intention of the broker to retain any interest in the cotton after the defendant paid for it; that some mills would demand the receipt before payment and others would not, depending upon how strict the cashier at the particular mill was; that the usual course of dealings of his corporation was that the mill would pay the broker, that then the broker would pay the bank the note in connection with the transaction and receive the receipt and send it to the mill. An officer of the plaintiff testified that in transactions of this nature it was usual for the broker to pay the note and receive delivery of the receipt; that the plaintiff expected the defendant to pay the broker for the cotton and knew of no reason why this should not be done. The finding was that the assistant treasurer of the defendant understood that the broker could and might use the receipt to pledge it with a bank for a loan, and that the doing of this would be nothing unusual.

The defendant excepted to certain findings of fact and rulings of law.

The findings of fact made by the trial judge in an action at law must stand and be accepted as final if warranted in

law upon any reasonable view of the evidence with all the inferences legitimately to be drawn therefrom. The general finding is conclusive if there is any evidence to support it. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143.

The finding as to the circumstances of the negotiation of the loan from the plaintiff to the broker and the purpose of the exhibition of the papers showing the transactions between the broker and the defendant and their effect upon the plaintiff was warranted by direct testimony of an officer of the plaintiff that he relied upon the receipt and that it constituted the collateral for the loan. The other findings in this connection were inferences which naturally might have been drawn from facts in evidence. *Hyland* v. *Hyland,* 278 Mass. 112, 118.

It was found that the plaintiff relied upon the broker to pay its note and expected the defendant not to pay the broker without the surrender of the receipt to the defendant, and also that the usual course of business was for the mill to pay the broker, then the broker paid the bank, took the receipt from the bank and sent it to the mill, and that the plaintiff expected that course. These findings mean that the plaintiff expected the defendant to pay the broker only upon condition that the receipt be returned, that the defendant would demand surrender of the receipt on payment and would pay only against surrender of receipt, or would consider payment unconditional only after the receipt had been returned. Thus these findings are not inconsistent but in harmony and are supported by the evidence. It is not necessary to review the other findings. It is enough to say that, so far as material to the grounds of this decision, the evidence with its reasonable inferences supports all the findings. The exceptions respecting the admission and exclusion of evidence become immaterial in view of principles of law governing the facts disclosed.

The transaction between the broker and the defendant related to the sale of bales of cotton. The documents signed by the defendant were termed respectively "sale note" and "warehouse receipt." They concern a sale of personal property. It is provided in the sales act, G. L. (Ter. Ed.) c. 106,

by § 65, giving the meaning of certain words, that "'Document of title to goods' includes any dock warrant, or order for the delivery of goods, or any other document used in the ordinary course of business in the sale or transfer of goods as proof of the possession or control of the goods, or authorizing or purporting to authorize the possessor of the document to transfer or receive, either by endorsement or by delivery, goods represented by such document"; and by § 29 that "A document of title in which it is stated that the goods designated therein will be delivered to the bearer, or to the order of any person named in such document, is a negotiable document of title. If such a document is a bill of lading, it shall be subject to chapter one hundred and eight; if a warehouse receipt, dock warrant, or however otherwise described, it shall be subject to chapter one hundred and five, and for the purposes of this section, the word 'receipt' as used in said chapter shall mean document of title, and the word 'warehouseman', as so used, shall mean bailee." The document signed by the defendant and entitled by its heading "warehouse receipt" falls within the language of these sections. It is a document used in the ordinary course of business. It purports to authorize its possessor to transfer or to receive the goods described therein and represented thereby. It states that the specified goods will be delivered to the order of the person named. It comes within the scope of § 29 because it bears on its face the name "warehouse receipt," and in any event it is within the sweep of the words "or however otherwise described." The defendant was a bailee within the description of that section. That one may be bailee of his own goods is shown by the express words of § 9 (h) of G. L. (Ter. Ed.) c. 105, and also by § 58, whereby penalty is imposed upon a warehouseman for failure to make disclosure of that fact. If the cotton had been placed in a public warehouse of a third person pending payment by the defendant, and a negotiable warehouse receipt had been issued to the broker, and by the latter had been pledged to the plaintiff, there can be no doubt that the plaintiff could recover from the warehouseman for conversion or wrongful delivery, even though it appeared on the

face of the receipt that the broker was seller and the defendant buyer of the cotton. This is plain from the provisions of G. L. (Ter. Ed.) c. 105. The plaintiff was none the less a *bona fide* purchaser of the receipt because of its knowledge that the broker was seller and the defendant purchaser of the cotton. The natural inference to be drawn from all the circumstances was that the defendant issued the receipt as security for payment of the cotton and that, since it was negotiable in form, it carried title to the cotton when pledged by the person named therein. There was therefore no notice such as prevents the plaintiff from being an innocent purchaser.

The defendant issued and put forth for circulation a document purporting on its face to carry title to the one hundred bales of cotton. The testimony was that the defendant knew that such documents were frequently pledged for loans. The plaintiff, relying on the representations in the document, took it properly indorsed as security and advanced money to the person named in the document as entitled to delivery of the goods and sustained loss. The plaintiff had no knowledge of the intent of the original parties to the document not disclosed on its face and not in any way communicated to it, and only knew that the broker was seller and the defendant buyer. This did not constitute notice that the receipt was not negotiable when by its terms it appeared to be negotiable, or that its representations were not to be carried out. This, in view of all the circumstances and of the quoted statutes, was enough to estop the defendant to assert defences which might be available against the broker, or to deny liability for loss caused to the indorsee of the receipt, by reliance upon its own representations. *McLearn* v. *Hill*, 276 Mass. 519, 524–527.

It becomes unnecessary, in view of these governing principles, to review in detail the requests for rulings granted and denied.

The measure of damages in any event was the value of the goods at the time they were converted by the defendant. *Jackson* v. *Innes*, 231 Mass. 558, 560. *Whitcomb* v. *Reed-Prentice Co.* 262 Mass. 348, 359. The defendant was not a

party to the note given by the broker to the plaintiff. It was liable only for the value of the cotton at the time of its conversion, and not for the debt owed by the broker to the plaintiff. The damage caused to the plaintiff in being deprived of its right to demand payment of its loan to the broker at the time of payment by the defendant to the broker was too remote, especially in view of the circumstance that the plaintiff relied solely on its receipt as collateral for the loan and gave to the defendant no notice of the fact that it held the receipt as collateral. It follows that damages should be assessed on the basis of the fair market value of the cotton at the several dates when it was used by the defendant, which was $10,056.18.

The result is that all the exceptions of the defendant are overruled except the one relating to the rule of damages. That is sustained. Since the facts are all before this court as to the damages, G. L. (Ter. Ed.) c. 231, § 124, it is ordered that judgment is to be entered for the plaintiff on the basis of $10,056.18 as the fair value of the cotton at the time of its conversion by the defendant.

*So ordered.*