ADOLPH H. GRAUSTEIN *vs.* H. P. HOOD & SONS, INC.

Middlesex.   April 8, 1935. — January 27, 1936.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Practice, Civil,* Exceptions, Rules of court. *Contract,* Construction, Under
seal, For the collection of money. *Evidence,* Extrinsic affecting writing;
Admissions; Opinion: expert; Of value. *Sale,* Construction of con-
tract of sale. *Assignment. Corporation,* Officers and agents. *Dam-
ages,* For breach of contract. *Proximate Cause. Interest.*

By Rule 74 of the Superior Court (1932), after the filing of a bill of excep-
tions, nonaction thereon by the trial judge for three months and notice
given by the clerk, the bill must be dismissed unless it is allowed or
disallowed, or the excepting party files an affidavit of its presenta-
tion to the judge, either within thirty days after the clerk's notice or,
upon extension of time granted within the thirty days, within the
extended time; but under peculiar circumstances this court passed
upon a bill of exceptions filed in 1932 and allowed over a year later,
treating extensions of time for allowance of the exceptions as including
extensions of time for filing the affidavit.
Comparison of a certain substitute bill of exceptions with the original did
not show error in the allowance of the substitute bill.
In a case heard by a judge without jury, a duly filed claim of exceptions
to his rulings might be incorporated by reference in the bill of excep-
tions subsequently filed.
Under a written contract for the sale of the assets and good will of a busi-
ness for a gross price, with a schedule of articles to be delivered and a
provision for reduction of price in case of shortage but none for increase
in case of excess, the seller could not recover the value of articles
delivered in excess of the schedule, nor was evidence admissible of a
parol agreement for such increase.
On a sealed contract for the sale of real estate and a contemporaneous
assignment of the unpaid purchase price by the vendor, the assignee
could recover the price from the vendee after the conveyance.
An admission in open court by a defendant's attorney that the defendant
owes the plaintiff a certain amount is binding and cannot be withdrawn.
An officer of a corporation familiar with its property may give opinion
evidence of the value of the property.
In an action for negligent breach of a contract to collect accounts receiv-
able of the plaintiff, a finding, partly by estimation, warranted by
contradictory evidence, charging the defendant with amounts lost
through his mislaying the plaintiff's books of account and his other
negligence, and not charging him with amounts lost through his exer-
cise of a right conferred by the contract, was final and was not review-

able by this court; nor could it be ruled that the loss with which the defendant was charged was not a proximate result of his breach.

In an action for breach of a contract by the defendant to collect the plaintiff's accounts receivable for a percentage commission, the defendant should have been credited with that commission on the amount found to be the loss suffered by the plaintiff through the defendant's breach.

Interest on unliquidated damages for breach of contract runs from the date of the writ, not from the date of demand.

CONTRACT OR TORT. Writ dated December 12, 1930.

The action was heard in the Superior Court by *Broadhurst,* J., without a jury.

*H. L. Barrett,* (*L. A. Mayberry & P. Nichols, Jr.,* with him,) for the defendant.

*W. A. Graustein,* as assignee and owner of the plaintiff's claims, *pro se.*

RUGG, C.J. This action was tried by a judge of the Superior Court without a jury. He filed findings and rulings on February 29, 1932. The findings were for the plaintiff on counts 2, 3, 4 and 5 of his declaration, for the defendant on counts 1 and 6, and for the defendant on its declaration in set-off. The defendant filed a bill of exceptions on March 19, 1932. The plaintiff filed a bill of exceptions on March 21, 1932. No action having been taken on the bill of exceptions of the defendant for three months after filing, notice was sent to the defendant, to the plaintiff and to the trial judge by the clerk of the court on June 21, 1932, that the time to act on that bill of exceptions would expire on July 22, 1932. Beginning on June 23, 1932, various motions of the defendant for extension of time for the allowance of its bill of exceptions were presented and were allowed by the court, each motion being allowed before the expiration of the time allowed by the next preceding extension. On the same dates motions to extend the time for allowance of the plaintiff's bill of exceptions were presented and allowed. On April 18, 1933, the defendant's motion to extend the time for allowance of its exceptions to and including May 10, 1933, was allowed, and on April 20, 1933, the court directed the clerk to note on that motion that the time was extended for filing the defendant's affidavit of pre-

sentment for allowance of its bill of exceptions under Rule 74 of the Superior Court (1932). The plaintiff excepted to the orders of the court on the defendant's motion of April 18, 1933. The plaintiff filed a motion on June 3, 1933, to dismiss the defendant's bill of exceptions on the grounds that the defendant had failed to prosecute its bill of exceptions as required by said Rule 74, that the court had no power to grant any extensions or to allow or disallow the defendant's bill of exceptions, and that the court had no jurisdiction to act further upon that bill. This motion was denied subject to the exception of the plaintiff. On June 15, 1933, the defendant filed its affidavit of presentment under said Rule 74. The plaintiff's bill of exceptions covering these exceptions was allowed and is before us.

This bill of exceptions requires an interpretation of Rule 74 of the Superior Court (1932). That rule, so far as here material, is in these words: "If within three months after filing, a bill of exceptions has not been allowed or disallowed by the justice to whose opinion, ruling, direction or judgment the exceptions were taken, the clerk shall forthwith notify the parties interested and such justice that unless within thirty days thereafter, or within such further time as may be allowed, an affidavit is filed with the clerk that the bill of exceptions has been presented by a party to the proper justice for allowance, the bill of exceptions will be dismissed and judgment or decree will be entered as though no exceptions had been filed. If, within such time, the bill of exceptions is neither allowed nor disallowed, and no such affidavit is filed, the exceptions shall be dismissed by the clerk without further notice or order. The justice to whose opinion, ruling, direction or judgment the exceptions were alleged may grant further time, and no other justice may do so, except in the cases provided for by G. L. c. 231, § 115 or in the absence of such justice from the commonwealth or where any one extension does not exceed seven days." The rule was established pursuant to G. L. (Ter. Ed.) c. 231, § 114. It is thereby provided that, "If an excepting party, in any civil cause in which excep-

tions may be alleged, shall not within such time after the filing of his exceptions as the court may determine to be reasonable thus present them to the court for allowance, the court . . . may . . . order them. dismissed . . . ." The rule relates to the allowance of bills of exceptions. Its terms are explicit. If the bill is not allowed within the period of three months after the date of its filing, then the bill can be kept alive only by filing with the clerk an affidavit, within thirty days after the expiration of such three months or within such further time as may be allowed (provided the bill of exceptions is not itself allowed within that time), to the effect that the bill has been presented to the judge for allowance. This rule differs in form and substance from earlier rules of the Superior Court pursuant to the same statute, as to the allowance of exceptions. See Common Law Rule 53 of the Superior Court (1923); Common Law Rule 54 of the Superior Court (1915); Common Law Rule 64 of the Superior Court (1912); *Frank, petitioner*, 213 Mass. 194; *Farris* v. *St. Paul's Baptist Church*, 220 Mass. 356. Those rules required that within thirty days after the expiration of the three months from filing the bill of exceptions, or within such further time as might be allowed by the trial judge, the bill of exceptions must be presented to the trial judge and be by him allowed, and if that was not done it should be dismissed. Those rules imposed on the excepting party the burden of seeing that the judge performed his duty of passing upon the bill of exceptions. If the judge did not allow the bill of exceptions within the time thus specified, it was essential that the excepting party, in order to keep his bill of exceptions alive, procure from the trial judge an order or orders extending the time for the allowance of the exceptions. *Frank, petitioner*, 213 Mass. 194. *Barnard Manuf. Co.* v. *Eugen C. Andres Co.* 234 Mass. 148, 152. *Herbert* v. *G. E. Lothrop Theatres Co.* 273 Mass. 462. Instances occurred, when those rules were in force, where a party could save his rights only by a petition to establish the truth of his exceptions. *C. F. Hovey Co., petitioner*, 254 Mass. 551. *Bath Iron Works, Ltd.* v. *Savage*, 262 Mass. 123. The

present Rule 74 is quite different in this particular. It requires an affidavit within the time specified that the bill of exceptions has been presented to the trial judge for his action. It does not put upon the excepting party the obligation to cause action of allowing or disallowing the bill of exceptions to be taken by the trial judge within a specified time, although doubtless he must be diligent in protecting his rights. *Meehan, petitioner,* 208 Mass. 60. The motions of the defendant in the case at bar to extend the time for the allowance of its exceptions were foreign to the language and design of said Rule 74. The defendant is required under this rule to present his bill of exceptions within the time specified (viz., within thirty days after the expiration of three months from the filing) to the trial judge for allowance. If the bill of exceptions is not allowed or disallowed within that time, he is required, within that same time or such further time as may be allowed, to file an affidavit that he has presented the bill of exceptions to the judge for allowance. If he does that, his duty is performed. Thereafter, responsibility for the allowance or disallowance of the bill of exceptions, or for failure to act upon it, rests upon the trial judge and not upon the excepting party.

Both parties and the trial judge in the case at bar failed to conform strictly to said Rule 74 from June 23, 1932, until April 20, 1933. The plaintiff pursued the same course as to his bill of exceptions on the main trial as did the defendant. Precise conformity to this rule required each party to procure a grant of further time for filing the affidavit described in the rule. Neither party did that in terms. Each party did procure a grant of further time for the allowance of the exceptions. Ultimate allowance of their respective bills of exceptions was the end and aim of each party. The action of the trial judge shows that he was trying to coöperate with them in the achievement of that end and aim. Exact conformity to said Rule 74 would have been incidental to that same end and aim. Extension of time for the allowance of the bills of exceptions would have been accomplished by granting extensions of time

to each party for filing the affidavit described in the rule. The orders of the trial judge allowing motions for extension of time for the allowance of exceptions were comprehensive in tenor. They were directed to the final allowance of the exceptions. It must be presumed that the trial judge intended to bring to pass a practical result in allowing those motions for extension of time for the allowance of the exceptions. It cannot be thought that he intended them to be vain gestures. The same is true of the defendant and of the plaintiff in filing their respective motions. In view of the practice under earlier rules governing the same subject, the comparative newness of Rule 74, and the manifest purpose of the parties and of the trial judge to preserve the vitality of the exceptions, we are of opinion that the several orders extending the time for the allowance of the exceptions ought to be broadly construed in the peculiar circumstances of the case at bar as including the incidental extension of time for filing the affidavit of presentment, without which, under the rule, the extension of time for the allowance of the exceptions could not be made. This conclusion does not relax in any degree the rigor of requirements for strict compliance with rules and statutes respecting the filing, presentment and allowance of exceptions. *Hack* v. *Nason*, 190 Mass. 346. *Commonwealth* v. *Greenlaw*, 119 Mass. 208. *Thorndike, petitioner*, 254 Mass. 256, 260. *Walsh* v. *Feinstein*, 274 Mass. 597. *Buchannan* v. *Meisner*, 279 Mass. 457. *Blank* v. *Krinsky*, 288 Mass. 59. Rule 2 of the Superior Court (1932).

The original bill of exceptions of the defendant was filed on March 19, 1932. On June 15, 1933, it filed a second substitute bill of exceptions. On July 13, 1934, it was permitted by leave of court to file a third substitute bill of exceptions and after extended hearing of both parties that substitute bill of exceptions was allowed on the same day. The plaintiff excepted to the order allowing the defendant to file such bill of exceptions and moved that it be dismissed. The grounds stated were that comparison of the third bill with the original bill shows that the latter was

not drawn in good faith and did not conform to the truth and was intermingled with erroneous, false and colorable statements, and that the third bill was substantially a new bill.   The plaintiff, in support of these grounds, has made a prolonged and detailed analysis of the two bills of exceptions.   It is devoted mainly to attempts to show that recitals of evidence were included in the original bill which were not accurate and which, as he contends, did not give a complete and colorless account of the testimony, and that there were important omissions of material testimony to the detriment of the plaintiff's contentions.   It is provided by G. L. (Ter. Ed.) c. 231, § 113, that the excepting party may be allowed to make such amendments to his bill of exceptions as will render it a more accurate statement of the exceptions originally filed by him.   In the interpretation of that statute, "great liberality is shown in permitting amendments to bills of exceptions before they are allowed. Where a party has in good faith attempted to comply with the statute in making his statement conformable to the truth, he should have ample opportunity before the judge to supply omissions and correct errors."   *O'Connell, petitioner*, 174 Mass. 253, 256.   In *Dorr* v. *Schenck*, 187 Mass. 542, 544, it was said that "the right of amendment should be treated liberally, in view of the purpose of a bill of exceptions  and the pressure of business under which such papers are often drawn."   *Moneyweight Scale Co., petitioner*, 225 Mass. 473, 479.   The trial judge, by allowing the third substitute bill of exceptions, has in effect decided that it is conformable to the truth and that there was no lack of good faith in the statements embodied in the original bill. *Harrington* v. *Boston Elevated Railway*, 229 Mass. 421, 432. Those were questions of fact touching which the trial judge was in a position to decide from personal observation and intimate acquaintance with the course of the proceedings. It would serve no useful purpose to enter into a comparison of the evidence as narrated in the original bill and in the one finally allowed.   *Ecklund* v. *Ecklund*, 288 Mass. 517. We are of opinion that it cannot be said rightly that there was want of good faith in filing the original bill or that the

changes made in the bill as allowed exceeded the limits of permissible amendment.

There is no merit in the contention of the plaintiff that no exceptions set forth in the defendant's claim of exceptions can be considered. That claim of exceptions was filed on March 3, 1932, before the first bill of exceptions was filed. That claim of exceptions was incorporated by reference in the bill of exceptions as originally filed. Specific physical annexation of a copy of it to the bill as allowed did not violate proper practice. It is not argued that otherwise exceptions omitted from the bill of exceptions originally filed have been included in the bill as allowed. There has been no infringement of prevailing principles. *Commonwealth* v. *Dow*, 217 Mass. 473, 482–483. *Commissioner of Banks* v. *Tremont Trust Co.* 267 Mass. 331, 337. *Commonwealth* v. *Davis*, 284 Mass. 41, 53–55.

This action is described in the bill of exceptions as one of contract or tort. It grows out of a sale on September 1, 1927, by the Maple Farm Milk Company of Massachusetts (hereafter called the vendor) to the defendant of the business theretofore conducted by the vendor of pasteurizing and bottling milk and cream and selling those commodities to several hundred customers located mostly in Boston, Cambridge and Watertown. The sale took place in the office of the attorney for the vendor in Boston. There were present the treasurer and general manager of the vendor and his uncle, the plaintiff, and the treasurer of the defendant and its attorney. A bill of sale was executed by the vendor transferring to the defendant its good will and all its assets except milk, cream and coal on hand, bills receivable, choses in action and other claims or demands owing to the vendor. The purchase price was paid to the attorney for the vendor to be held by him under an escrow agreement for fifteen days pending determination whether the vendor delivered the number of articles or quantity of supplies set forth in a schedule attached to the escrow agreement. That agreement provided for a downward revision of the purchase price in case the number and quantity of articles delivered proved to be less than called for,

but had no provision for an upward revision in case they exceeded those specified in the agreement. Further findings and rulings of the trial judge are in these words: "The escrow agreement also contained the following provision: 'It is expressly understood and agreed that the above delivery of good will and trade refers only to the retail and wholesale business of (vendor) and not to any sales of milk or bottling of milk for Hager or other milk dealers, but said (defendant) may take over if it so desires said sales of milk to Hager or other dealers'. In the milk business as carried on by the vendor and the defendant and others similarly engaged, customers are classified as retail, wholesale or dealer customers. Retail customers are those who buy for domestic use, such as individuals or families. Wholesale customers are those who buy in larger quantities for resale, such as stores and restaurants, or for service to inmates, such as hospitals and similar institutions. Dealer customers are those who are themselves in the milk business but who, having no bottling plants of their own, buy bottled milk of other dealers. The plaintiff . . . claims that at the meeting on September 1, it was orally agreed among all the parties that if the defendant continued after September 1, 1927, to sell milk to any of the dealers who were then vendor's customers, it should pay an agreed price for that business, in addition to what it agreed to pay for other property bought of the vendor. Assuming that it would be open to the vendor, and to the plaintiff as its assignee or on his own behalf, to prove, notwithstanding the language of the bill of sale and escrow agreement relative to good will, that an oral agreement had been made to buy any part of the vendor's dealer trade, the evidence does not convince me that such an agreement was made, and the plaintiff having failed to sustain the burden of proof in that respect, I find that he is not entitled to recover compensation for said dealer trade, as claimed in the account annexed . . . to the first and sixth counts of his declaration. The plaintiff also claims in the first and sixth counts of his declaration, extra compensation for merchandise alleged to have been delivered to the defendant in

excess of the quantities or numbers of articles set forth in the schedule attached to the escrow agreement. But the bill of sale and escrow agreement are explicit to the effect that all the vendor's personal property, of every kind and wherever situated (with certain exceptions expressly noted therein) is conveyed thereby to the defendant, and I . . . rule . . . that the plaintiff is not entitled to recover under the first and sixth counts ·of his declaration for any alleged overdelivery of personal property."

So far as these are findings of fact, it is plain that they must stand. This being an action at law, the general and specific findings are conclusive against the plaintiff if there is any evidence to support them. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143. *Bianco* v. *Ashley,* 284 Mass. 20, 26. *Gilbert* v. *Beacon Hill Credit Union,* 287 Mass. 433, 436. *Mutual Life Ins. Co.* v. *Royal,* 291 Mass. 487, 490.

The rulings of law were right. The instruments to be construed were in writing. They were drafted by attorneys in the presence of the executive officer of each party to them. The meaning of their words was clear and not ambiguous. They could not be varied by parol evidence. *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122, 132–133. *Marston* v. *Boston Publishing Co.* 271 Mass. 307, 313. *Goldband* v. *Commissioner of Banks,* 245 Mass. 143, 150. *Kennedy Bros. Inc.* v. *Bird,* 287 Mass. 477, 482–483. The case at bar is distinguishable in this respect from cases like *Martin* v. *Jablonski,* 253 Mass. 451, 456–457, and *Clark* v. *State Street Trust Co.* 270 Mass. 140, 152–153.

At the meeting on September 1, 1927, a contract was made whereby the vendor agreed to sell and the defendant to buy land and buildings in East St. Johnsbury, Vermont, for $2,600. Conveyance was to be made on or before September 15, 1927. The plaintiff was a creditor of the vendor in a substantial amount and held a chattel mortgage on much of the tangible personal property of the vendor as security. The plaintiff executed and delivered a discharge of this mortgage in order to enable the vendor to make the sale to the defendant. He received from the vendor a written assignment of "all the accounts receivable

and choses in action, demands or claims of any kind or nature against any person or persons and all and whatever sum or sums of money now due or coming due to it from any and all of its debtors." The defendant through its representatives present at the meeting knew of this assignment. It was intended by all parties that the plaintiff should receive all payments that were then or thereafter to become due from the defendant on account of the entire transaction. The defendant was obliged to discharge some incumbrances on the St. Johnsbury real estate in order to obtain title, but the balance due from the defendant is $1,970.59 with interest. During the trial counsel for the defendant admitted that this amount was due. After the evidence was closed counsel for the defendant filed a withdrawal of this admission. The trial judge on this point stated: "There is no dispute between the parties that the defendant owes somebody the above named sum with interest thereon, for the real estate. I rule that the plaintiff is entitled to recover it as assignee, apart from the admission, but if it were necessary to hold the defendant bound by its admission, to find the plaintiff entitled to recover for the real estate, I should hold the admission to be binding, and find for the plaintiff. This claim is included in the fifth count of the plaintiff's declaration."

There was no error in this. The plaintiff is seeking not to enforce a sealed instrument to which he is not a party but simply to recover a debt due which has been assigned to him. *Universal Adjustment Corp.* v. *Midland Bank, Ltd., of London,* 281 Mass. 303, 311. No reason is disclosed why the defendant should not be bound by the admission made in its behalf. *Wyness* v. *Crowley,* 292 Mass. 461. The case at bar is distinguishable from *Goldstein* v. *Tucker,* 230 Mass. 259, 262. The assignment was made contemporaneously with the sale of the assets of the vendor and the contract for the sale of the real estate in Vermont. The debt arising from the sale of that real estate had a potential, if not an actual, existence at that time. All the engagements were parts of a single transaction. In these circumstances the assignment to the plaintiff from the

vendor was valid as to the balance due on the real estate. Taylor v. Barton Child Co. 228 Mass. 126, 130. Claycraft Co. v. John Bowen Co. 287 Mass. 255. Newburyport Society for the Relief of Aged Women v. Noyes, 287 Mass. 530, 534.

There was no error in the admission of testimony of the treasurer, director and general manager of the vendor as to the value of its coal at its plant in Vermont. He saw it, estimated its quantity, and gave opinion as to its value. He saw the bill for this coal, had been doing business in that place for three years, and had been in the habit of making inquiry as to the cost of coal from dealers. He manifested familiarity with the subject. Whether testimony of this nature should be admitted rests largely in the discretion of the trial judge, whose decision will not be reversed unless plainly wrong. Johnson v. Lowell, 240 Mass. 546, 549. Guinan v. Boston Elevated Railway, 267 Mass. 526, 528. Compare Maher v. Commonwealth, 291 Mass. 343.

Another contention between the parties relates to the accounts receivable of the vendor. The findings of the judge on this matter were these: "At the meeting on September 1, 1927, question was raised as to who should collect the vendor's accounts receivable, which were then assigned to the plaintiff. Defendant's representatives said that they desired that its accounts with vendor's customers should commence on the first of the month, and that it would be advantageous to the defendant if its agents alone should collect accounts receivable prior to September 1. It was thereupon agreed between the parties that the defendant alone should collect the vendor's accounts receivable as agent for the plaintiff, and that it should be entitled to retain seven per cent of the amount collected for its services. It was understood that the defendant would undertake to collect only such accounts in the main as had accrued within sixty days prior to September 1 and were regarded by the vendor as collectible. At the defendant's request, for its assistance in collecting the accounts, all and the only books and records of the vendor which showed the amounts due from customers (except dealers),

as well as their names and addresses, were taken over by the defendant within a few days after September 1. Few of the vendor's customers had paid their accounts at the office or by mail. Most of them paid the driver on the route. The vendor's drivers remained in the employ of the defendant after the sale, but most of them were dismissed within ten days, and within two weeks after the sale their routes had been divided among and consolidated with defendant's routes. The defendant had a clear right to dismiss vendor's drivers who entered its employ, and to consolidate vendor's routes with its own, but this process made the collection of accounts more difficult, and probably resulted in the loss of some. For any such loss the defendant is not responsible. It was implied in the defendant's undertaking that it would make reasonably diligent and persistent effort to collect all the accounts recorded in the books which it took over. A great deal of evidence was offered tending to show the value of the accounts receivable. Much of it produced by the defendant I am unable to credit. It is impossible to determine with mathematical exactness just what the good accounts receivable by the vendor amounted to at the close of business on August 31, 1927, but on all the credible evidence I find that if the defendant had discharged its undertaking it could have collected $8,500 of such accounts. The defendant mislaid, lost or destroyed substantially all the vendor's books and records of the accounts receivable within six months after the sale. It never notified the vendor or the plaintiff until the opening, or shortly before the opening, of the trial, four years after the sale, that it could not produce the books. It never notified the vendor or the plaintiff that it was no longer willing or able to collect the accounts, and while it had the vendor's books, it never offered to return them and it never requested the vendor or the plaintiff to take over the collection of the accounts. As a practical matter, it would be impossible to collect the accounts without the aid of the books, certainly after more than four years from the time they accrued. The loss of the accounts was not due to any fault or neglect of the plaintiff. . . . On

all the credible evidence I find that the defendant did not make reasonably diligent and persistent effort to collect the accounts in accordance with its undertaking and that the plaintiff without fault or neglect of his own has suffered a loss thereby of the difference between $8,500 and $889.65 or $7,610.35, which sum, with interest from March 1, 1928, on or before which date payment was demanded, I find that the plaintiff is entitled to recover under the second count of his declaration."

The defendant has argued at length that the finding of the trial judge touching the agreement of parties as to the collection of the accounts receivable by the defendant is unreasonable and is not warranted by the evidence. It is not for this court in an action at law to weigh evidence and to revise findings of fact. The findings made by the trial judge must stand if there is any evidence to support them. *Moss* v. *Old Colony Trust Co*. 246 Mass. 139, 143, and cases cited. *State Street Trust Co*. v. *Lawrence Manuf. Co*. 284 Mass. 355, 359–360. *Gilbert* v. *Beacon Hill Credit Union,* 287 Mass. 433, 436. It is not necessary to analyze the testimony in detail. It was highly contradictory. It cannot rightly be said that the finding as to the terms of the agreement between the plaintiff and the defendant is without basis in the evidence. The main argument of the defendant on this point is that the weight of the evidence is contrary to the finding. To pass upon that question is not within our province. That agreement is not so vague as to be unenforceable.

There was evidence as to the amount and value of those accounts receivable; it was not wanting in definiteness; its credibility was for the trial judge. There was testimony to the effect that the amount of these book accounts was about $10,000 and that these debtors had theretofore paid promptly. The amount found to have been collectible by the defendant in the exercise of due diligence cannot be pronounced unreasonable. Damages of that nature are not so uncertain, remote and conjectural as to be beyond the range of estimate from the evidence, if found reliable. This branch of the case is governed by the principles dis-

cussed at large in earlier decisions; they need not be repeated. *C. W. Hunt Co.* v. *Boston Elevated Railway*, 199 Mass. 220, 236–238, and cases reviewed. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 21. *Neal* v. *Jefferson*, 212 Mass. 517, 523. *Hawkins* v. *Jamrog*, 277 Mass. 540. *Galvin* v. *Nutting-Pillman Amusement Co.* 284 Mass. 314, and cases cited. *Potier* v. *A. W. Perry, Inc.* 286 Mass. 602, 606–607. *Piper* v. *Childs*, 290 Mass. 560, 563. *Story Parchment Co.* v. *Paterson Parchment Paper Co.* 282 U. S. 555, 562–566. The case is quite distinguishable from decisions like *New England Iron Works Co.* v. *Jacot*, 223 Mass. 216, 220, 221, and *Lowrie* v. *Castle*, 225 Mass. 37, 52, 53, 54.

The finding that the books of account were lost by the defendant and that the accounts receivable were uncollectible without the books has some support in the evidence and cannot be pronounced unwarranted. Loss to the plaintiff of these accounts might have been found to be the necessary result, and it cannot be held that the damages found exceeded the actual loss sustained by the plaintiff. *National Non-Theatrical Motion Picture Bureau, Inc.* v. *Old Colony Trust Co.* 270 Mass. 34, 36–37. It could not rightly have been ruled as matter of law that such damages were not the proximate result of the failure of the defendant to perform its undertaking and might not reasonably have been contemplated by the parties as consequence of breach of its obligation by the defendant. *Denny* v. *New York Central Railroad*, 13 Gray, 481, 485. *Johnston* v. *Faxon*, 172 Mass. 466. See *Wallace* v. *Ludwig*, 292 Mass. 251, 254–255.

There was error in the computation of damages. The finding was that, if the defendant had discharged its undertaking to the plaintiff, it could have collected $8,500 of the accounts receivable. Damages were assessed on the second count in the plaintiff's declaration for $7,610.35, which was the difference between $8,500 and the $889.65 actually collected and assessed as damages under the third count of the plaintiff's declaration, with interest from March 1, 1928, when demand was made for payment.

Thus it appears that damages were assessed for the entire amount which, according to the finding of the trial judge, the defendant ought to have collected and paid to the plaintiff. The agreement was that the defendant should be entitled to retain seven per cent of the amount collected for its services. It is plain that, if such collection had been made, the plaintiff would have been entitled to receive from the defendant only that amount less seven per cent. The plaintiff is not entitled to receive the entire sum without the deduction. The plaintiff clearly is not damaged in the amount of this seven per cent because, in any event, he would not be entitled to receive it. That seven per cent ought to have been deducted from the $7,610.35.

There was error in the computation of interest. It is manifest that the damages of the plaintiff for the failure of the defendant to discharge its undertaking to the plaintiff in collecting the accounts receivable were unliquidated. It was impossible for either party alone to calculate those damages from established facts. Damages were found by the trial judge only by the exercise of the judicial function in weighing evidence and making estimates. The determination of damages was much different from making a computation. Therefore, interest was allowable only from the date of the writ and not from the date of demand. *Childs* v. *Krey*, 199 Mass. 352, 358. *McGrimley* v. *Hill*, 232 Mass. 462, 464. *Cochrane* v. *Forbes*, 267 Mass. 417, 420. *Royal Paper Box Co.* v. *Munro & Church Co.* 284 Mass. 446, 451. The case at bar is distinguishable from cases like *Frazer* v. *Bigelow Carpet Co.* 141 Mass. 126, and *Young* v. *New York, New Haven & Hartford Railroad*, 273 Mass. 567, 572.

Although these errors require that the defendant's exceptions be sustained, they do not necessitate a new trial. The facts are all in the record. The errors of law committed by the trial judge have resulted only in errors of fact now capable of being rectified by mathematical reckoning. Those errors of fact in the light of all the findings can be corrected without a new trial. G. L. (Ter. Ed.) c. 231, § 124.

All the exceptions argued have been considered but need not be discussed at further length. The result is that the exceptions of the plaintiff are overruled and that the exceptions of the defendant are overruled, except those relating to damages under the second count of the plaintiff's declaration, which are sustained; the damages under that count are to be computed in the Superior Court by deducting seven per cent from $7,610.35 and computing interest on the balance from the date of the writ.

*So ordered.*