NOVEMBER 4, 1801.

# Nath'l Hart's Ex'tr *v.* Chris. Chinn's Heirs.

*Upon an appeal from a decree of the Lexington District Court.*

1. The husband acquires no transferable interest in the lands of his wife unless she have seisin thereof during the coverture.

2. Where a testator, holding a number of title bonds for land, directed in his will that his executor should allot to his daughter 1,000 acres of his land, the husband of the daughter, claiming in her right, can acquire no interest in the land by getting possession of one of the title bonds; and neither his assignment of the bond, nor sale of the land covered by it, will pass any interest to his vendee.

By the will of Nathaniel Hart it appears that he devised to his daughter, Keziah Thompson, among other things, a tract of good land, not to exceed one thousand acres, to be allotted to her by his executors named in the said will. It also appears, by the exhibits in the cause, that Nath'l Hart, the testator, in his lifetime, became possessed, by the assignment of Nath'l Moss, of a bond executed by George and James Bryan to the said Moss, conditioned for the conveyance of 500 acres of land, part of the said George Bryan's settlement and pre-emption, situate on the head of Cane run. It appears, also, that Lawrence Thompson, who had intermarried with Keziah, the daughter of the said testator, had, previous to the 20th day of November, 1786, the time he received the said bond from Isaac Shelby, sold the 500 acres of land mentioned in the condition of the said bond, to Christopher Chinn, under the pretense that the said 500 acres of land had been allotted to him in part of his said wife's legacy, and that the said bond had been delivered to him in consequence of that allotment.

On this statement of the case, one question only seems to arise, viz: whether there was ever such an allotment or transference of the 500 acres of land mentioned in Bryan's bond, by the executors of the testator, to Keziah Thompson, the devisee, as could authorize any sale of the land by Lawrence Thompson, husband of the said devisee.

The total want of proof as to any agency of Mrs. Hart in this business, and the testimony of Isaac Shelby, furnish decidedly a negative answer to the question.

Shelby deposes, that about the 16th of April, 1783, being at the house of Mrs. Sarah Hart, at Boonesborough, she informed him that her papers were in bad order, and requested that he would look over them and put them up as he thought best; that he did look over them, endorsed many of them, and tied them up in separate bundles; that the bond of George and James Bryan for the conveyance of 500 acres of land was one of those papers which he endorsed; that Mrs. Hart departed this life in the latter end of March, 1785; that he, the said Shelby, and Lawrence Thompson, after her death, put into a large chest all the papers which she left; that about the month of February, 1786, he, the said Shelby, administered upon the estate of Mrs. Hart, and that he soon after took into his possession the papers which had been put into the chest by Thompson and himself; that on the 20th November, 1786, Lawrence Thompson went to the house of the said Shelby, and

stated to him that he was very much embarrassed and distressed, and entreated him to give him up two bonds in his possession, belonging to the estate of Nath'l Hart, deceased, for 900 acres of land; that the said Shelby, being moved with pity at Thompson's situation, did agree to let him take from among the papers in his hands the two bonds which he applied for, provided he would give him, the said Shelby, security for so doing, which Thompson promised, but never performed; that Shelby did accordingly deliver to Thompson the two bonds, one of which was the bond executed by George and James Bryan for 500 acres of land as aforesaid, the other executed by Nath'l Bullock for the conveyance of 400 acres of land, for both of which bonds Thompson passed his receipt to Shelby, which receipt he delivered to Nath'l Hart, the appellant, after he arrived at age and took upon him the execution of his father's will.

· It is worthy of remark, that in the whole of this transaction between Shelby and Thompson, there never was the slightest intimation given by Thompson that he had acquired, by the allotment of Mrs. Hart, or otherwise, any exclusive right to Bryan's bond, or that he was entitled, in right of his wife, to any more than a distributive share of the land; and although it is in proof that Thompson was in possession of Bryan's bond prior to Shelby's taking possession of the papers left by Mrs. Hart, yet the circumstance of his returning it, and afterward making application to Shelby for it, without claiming any exclusive right to it, must be conclusive evidence that he had none; more especially when it is considered that Mrs. Hart, the only acting executrix before her death, had never made any transfer of the bond, which would undoubtedly have taken place had the land therein mentioned to be conveyed been appropriated by her in part discharge of the legacy given to Keziah Thompson by her deceased father; and if Thompson had no right to the bond at the death of Mrs. Hart, certainly the bare delivery of it afterward by Shelby, who had no authority to intermeddle with the estate of Nathaniel Hart, deceased, could confer none.

The allegation of the bill, and the testimony of William Chinn, respecting the appellant's confirmation of the sale made by Thompson, are so pointedly and positively contradicted by the answer, that they afford no ground for a court of chancery to found a decree on. But, admitting that the appellant's confirmation of Thompson's sale to Chinn had been fully and satisfactorily proven,

or had it been proven that Mrs. Hart, in her lifetime, allotted the 500 acres of land contained in Bryan's bond to Lawrence Thompson in part of his wife's legacy, and had even assigned the bond to him, still, in either, or both of those cases, the sale made by Thompson alone, independent of his wife, could not legally be sustained, because the devise being to her, and not to him, his having a transferable interest in the land depended on the contingency of her obtaining seisin of the land during the overture.

The decree of the district court of Lexington, therefore, being wholly erroneous, this court doth decree and order that the said decree be reversed *in toto* with costs. And it is further decreed and ordered, that the complainants' (appellees' in this court) injunction be dissolved, their bill dismissed, and that the defendant, Hart (the appellant in this court), be permitted to have the benefit of his judgment at common law. And it is further decreed and ordered, that the suit be remanded to the district court at Lexington that this decree may be entered on the records of the said court, and that it may make such other decrees and orders herein, not inconsistent with this decree, as law and equity may require; which is ordered to be certified to the said court.