Submitted on briefs March 15; affirmed March 28, 1933

## MOTT *v.* WESTERN SAVINGS & LOAN ASSOCIATION

### (20 P. (2d) 236)

*Glenn E. Husted* and *Barnett H. Goldstein,* both of Portland, for plaintiff.

*E. L. Wilson,* of Portland, for defendant, Grant Thuemmel.

*Bartlett Cole,* of Portland, for defendants, George K. Armen, Stephen O'Neill, and Ernest C. Lehrer, and intervener.

KELLY, J. It is urged by defendants, Armen and O'Neill, and the intervener that the circuit court erred in holding that shareholders, who gave notice of with-

drawal prior to the time when the corporation commissioner took charge of the association, did not thereby become creditors of the association or obtain any preference right over shareholders who gave no notice of withdrawal; and, especially, in holding that the intervener, whose notice of withdrawal was given more than sixty days prior to the date when the corporation commissioner took charge, did not become a creditor of the association at the expiration of that sixty-day period, or thereby obtain any preference rights over other shareholders.

Error is also predicated upon the trial court's holding that shareholders, owning fully paid stock, do not by reason thereof have any priority or preference right over other shareholders.

It is also claimed that the circuit court erred in holding that members or shareholders, who borrowed money of the association and pledged their shares of stock or gave mortgages on real property as security for the loan, are not entitled to set off against their debts the withdrawal value of their shares of stock or any part thereof.

Plaintiff calls attention to the order of the trial court directing him, as corporation commissioner, to return to the payors payments made by members or shareholders to plaintiff in his official capacity as statutory receiver after plaintiff took temporary charge of the association on May 26, 1931, and before his possession thereof became final on June 24, 1931; and suggests a ruling thereupon by this court.

The questions under consideration are presented by means of demurrers supplemented by stipulations.

Defendant, Thuemmel, filed an answer to which plaintiff interposed a general demurrer. Plaintiff and

said defendant, Thuemmel, and another defendant, filed a stipulation admitting the allegations of paragraphs IV, V, VI and VIII of the complaint.

Defendants, Armen, Lehrer and O'Neill filed a demurrer to said complaint, which in reality is in the nature of a motion for judgment on the pleadings.

The following stipulation between plaintiff and defendant, Lehrer, was filed, viz:

''In this case it is stipulated and agreed that the sum of forty-two dollars ($42.00) paid by defendant Ernest C. Lehrer to plaintiff as statutory receiver, as set forth in the sixth cause of suit, was not mingled with the other funds or assets of the association in the hands of plaintiff as such receiver, was not credited to Lehrer as a payment on his stock subscription, and, with other like payments made between May 26 and June 24, 1931, was kept separate and distinct in an account called by the plaintiff, as such receiver, a 'trust account', which account consists of no other items than this and other like payments made between those dates, that the association, when the payment was made, was insolvent in that its assets were entirely inadequate, after paying its general creditors, to pay its general shareholders the full withdrawal value of their shares of stock and insufficient to pay anything to its reserve fund shareholders, that defendant Lehrer did not, and the plaintiff did, know of such insolvency when such payment was made''.

Pursuant to a stipulation, an order was made permitting Jean M. Paterson to file a petition in intervention. In this petition, all of the facts set forth in the complaint are incorporated; and it is affirmatively alleged that on March 13, 1931, the intervener, who was then a member and shareholder of defendant, Western Savings & Loan Association, whose shares of stock were of the class designated in the by-laws as class E, which shares were not delinquent and had not been de-

clared forfeited in such association, were then more than two years old, and were of the withdrawal value of two hundred eighty-eight and 02/100 dollars ($288.02), that is to say, such sum was the amount intervener had paid in on such stock, less membership fees and fines and plus three-fourths of all earnings credited to such shares, gave notice in writing to the secretary of said Western Savings & Loan Association of her intention to withdraw her shares from the association, and that no part of such sum has ever been paid to her.

To this petition, plaintiff filed a general demurrer.

Thus it appears that paragraph VIII of the complaint herein is admitted by all parties, which paragraph is as follows:

## "VIII.

"That after paying administrative expenses, taxes, assessment, repairs and reserving funds for current dividends, the net monthly receipts of the association were not, at the date of such withdrawal notice, [February 28, 1931] nor were they at any time thereafter, sufficient to pay such withdrawal value of such shares of stock nor any part thereof, and that the assets of the association, at the date of such withdrawal, were not, nor were they at any time thereafter, sufficient to pay all the holders of its general stock the full withdrawal value thereof, nor to pay any sum whatsoever to its reserve fund stockholders, but that its assets at all such times were, and they are, sufficient to pay its general creditors in full".

Section 25-310, Oregon Code 1930, is as follows:

"Withdrawal of shares—Surrender payments on stock.—Any shareholder whose stock is not delinquent and has not been declared forfeited in such association, and whose share or shares are not pledged upon a loan, may withdraw such share or shares from the associa-

tion at any time after one year by giving at least sixty days' notice in writing to the secretary of his intention to do so; at the end of said sixty days the association shall pay to the members so surrendering as follows: If said stock is not more than two years old, all amounts paid in by such members upon such stock, except the sums paid as membership fees and fines. If said stock is more than two years old, the member upon such surrender shall receive, in addition to the amount above specified, at least three-fourths of all earnings credited to such shares; provided, that not more than one-half of the monthly instalments received by such association for any month shall be used to pay withdrawals without consent of the board of directors; provided further, that the directors of such association in their discretion may authorize the withdrawal of any share or shares at any time when such withdrawal appears to be in the best interests of such association''.

■ In the case of a withdrawing stockholder, if the notice of withdrawal was given and matured while the association was a solvent going concern, he is entitled to be ranked as a general creditor, otherwise, not. Sundheim, Law of Building & Loan Associations (2d Ed.), p. 185, § 180.

■ It is well settled that, when an association is insolvent, the giving of a notice of withdrawal will not change the relation of the member to the association so as to place him in the position of a creditor rather than a stockholder. 4 R. C. L. 358; *Brown v. Victor Building Association,* 302 Pa. 254 (153 Atl. 349); *Englehardt v. Fifth Ward Loan Association,* 148 N. Y. 281 (142 N. E. 10, 35 L. R. A. 289) ; *Heinbokel v. National Savings Loan & Building Association,* 58 Minn. 340 (59 N. W. 1050, 25 L. R. A. 215, 49 Am. St. Rep. 519); *In re Puget Sound Savings & Loan Association,* 49 Fed. (2d) 922.

■ A building and loan association is deemed to be insolvent when it cannot pay back to its stockholders the amount of their contributions, dollar for dollar. 9 C. J. 991, § 138; Sundheim, Law of Building and Loan Associations (2d Ed.), p. 179, § 175; *Stone v. Schiller B. & L. Ass'n.*, 302 Pa. 544, 552 (153 Atl. 758).

■ The intervener, Jean M. Paterson, gave notice of withdrawal on March 13, 1931, defendant Thuemmel gave notice on April 21, 1931, and defendant Armen on May 11, 1931. All of these notices were given subsequent to February 28, 1931, and hence at a time when the association admittedly was insolvent. The learned trial judge committed no error in holding that these parties were not creditors nor entitled to preference by reason of their attempted withdrawals.

The English rule is at variance with the foregoing pronouncement. Wurtzburg on Building Societies, (5th Ed.) 404.

In *Pierce v. Topeka Commercial Security Co.*, 60 Kan. 164 (55 P. 853), cited by appellant, defendants and intervener, it is not held that shareholders who gave notice of withdrawal thereupon became creditors. The doctrine of that case is that a stockholder, who has paid the full face value of his stock, when proceeded against by a creditor of the corporation to enforce the statutory liability for the debts of the corporation may show by way of set-off that the corporation is indebted to him upon bona fide claims and demands which accrued before he became liable as a stockholder. *Young v. Stevenson*, 180 Ill. 608 (54 N. E. 562, 563, 72 Am. St. Rep. 236), also cited by appealing defendants and intervener, is a case wherein the receiver of an association sought to recover from a stockholder who had withdrawn from the association the full book value on a large number of shares. There the court

notes that the powers of the receiver are not defined by statute and are therefore such only as are conferred by equity under their equitable jurisdiction upon receivers appointed by such courts. On this point, speaking through Mr. Justice Boggs, the court say:

"As receiver, he represents the corporate body, and not its shareholders. He succeeds to all rights of action which had accrued to the corporation, but not to rights of action which rested in the shareholders. If it were still solvent, in full operation, and no receivership had been constituted, the association could not maintain an action against the appellee to recover the sums paid on the stock withdrawals. The right of action, if any, rests in the stockholders of the association, not in the receiver thereof".

We quote further from that opinion:

"Cases cited holding that, after the insolvency of a building and loan association has been judicially declared, a shareholder cannot discharge his indebtedness to the association with its stock, have no application here. The distinction is that in the case at bar the value of the stock was determined according to the by-laws of the association, and the appellant had the right to demand that the amount so determined should be paid him in money, and in the cases cited the associations were insolvent, and the stock had no known or adjustable value, and its holder had not the right to demand any sum from the association in payment for his stock, but was required to await the adjustment of the affairs of the association, and accept such sum for his stock as he should be found entitled to upon due administration of the receivership".

It will be noted that it is not a case wherein the stockholder merely gave notice of proposed withdrawal; but one in which the full book value of the stock actually had been withdrawn. Nothing in the opinion relates to the rights and privileges of a stockholder merely giving such notice.

*Silvers v. Merchants' & Merchants' Sav. Fund & Bldg. Ass'n.,* 56 Atl. 294, also cited by appealing defendants and intervener, is a case wherein, during the solvency of the association, a shareholder gave notice of its withdrawal and the court upheld such withdrawal. In the case at bar the notices of withdrawal were given after the association had become insolvent.

As heretofore stated, Wurtzburg on Building Societies (5th Ed.) 404, states the English rule which is not followed in the United States. 9 C. J. 996, § 148, notes 5 and 6.

While, as stated, appealing defendants and intervener assign error in the holding that stockholders owning full-paid stock do not by reason thereof have any priority or preference right over other shareholders; this assignment is not discussed in their brief and no authorities are cited in support of their position thereupon.

In Sundheim, Law of Building and Loan Associations, p. 47, § 37, inter alia, it is said:

"Full-paid stock resembles more nearly stock issued by other corporations in that the member pays the matured or par value at the time of its issuance, and is thereupon entitled to receive in cash all dividends declared thereon. In some instances, these shares participate in the profits as fully as regular installment shares, but in most cases a fixed rate of interest or dividend is allowed. In case of insolvency of the association, holders of such certificates are entitled, like other members, only to a share of the assets proportioned to the amounts they have paid in, as no class of stockholders is entitled to preference over others.

"The advantage to be derived from the issuance of this class of stock is that it enables an association to procure money from investors to loan to its members,

which otherwise it would not have. The conditions upon which such stock may be issued were stated in a leading case to be:

"1. The dividends must not be guaranteed, but payable only out of the profits.

"2. In case of loss or insolvency, the holders thereof may be entitled to no preference or advantage over the other stockholders.

"3. The issue of such stock must be incidental to the main business of the association and intended to provide a fund from which loans may be made to the holders of installment stock".

■ The value of any member's stock is not a present subsisting claim against the building association. Its value, if the member continues in the society, depends upon his going through the whole course of the scheme, and can be ascertained only upon and after complete winding up. Endlich on Law of Building Associations, p. 180, § 144.

■ Paid-up shareholders are shareholders in legal effect. Thompson on Building Associations (2d Ed.) 253, § 132.

If a series of stock has matured and insolvency then intervenes, its holders must share in the losses with the holders of the series unmatured. Thornton and Blackledge on Building and Loan Associations, § 367.

We hold therefore that no error was committed by the learned trial judge in refusing to give a priority or preference to paid-up stockholders over other shareholders.

■■ There is a conflict of authority as to the proper mode of settlement with the borrowing members of a prematurely dissolved building and loan association.

There is a rule known as the Grosscup Rule of Settlement by virtue of which the borrowing member

is chargeable with the amount of money he actually received from the association, together with legal interest thereon from the time he received it, and is entitled to credit for all interest paid by him and for the unearned portion of the premium but not for the earned portion. 4 Ann. Cas. 1081. This rule is announced by the state courts of Illinois, Montana, and a number of federal courts.

There is another rule designated the Maryland Rule of Settlement. This rule may be summarized as follows: In stating the account, the borrowing member should be credited with all sums paid by him to the association, whether as dues, premium or interest, together with interest thereon, and should be charged with the sum advanced him by the association, together with interest thereon at the legal rate, the calculations being made on the partial payment plan. This rule has been followed in a number of federal jurisdictions and by the state courts of California, Maryland, Massachusetts, North Carolina, South Carolina, Texas, Utah, Washington, and in a qualified way in South Dakota. 4 Ann. Cas. 1081.

In the case of *Preston v. Lamano,* 46 Misc. 304 (93 N. Y. S. 210), it was held that a borrowing member, in settling with an insolvent building and loan association, cannot be credited on his mortgage with the payments made on the capitalized premium and the sums paid and charged to him for dues, but must await his proportionate share as a stockholder at the final liquidation of the net assets among the creditors and stockholders. The doctrine of this case has been denominated as the New York Rule of Settlement. 1914B Ann. Cas. 1272.

There is also the Pennsylvania Rule of Settlement, which is often stated as follows: A borrowing member

should be charged with the money he actually received, together with interest thereon at the legal rate from the date of its receipt, and credited with all payments of premium and interest as of the date when paid. He should not be allowed credit for the payment of dues upon his stock. The balance due should be calculated upon the partial payment plan. With reference to his stock payments, he should be treated as if he were a non-borrowing member and the fund remaining after the payment of all prior liabilities should be distributed pro rata among all the stockholders on the basis of the amounts paid by them respectively as dues, whether they are borrowing or non-borrowing members. The decided weight of authority follows this rule. It has been followed in a number of federal jurisdictions and by the state courts of Arkansas, Delaware, Georgia, Indiana, Iowa, Kentucky, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Jersey, New Mexico, New York, North Dakota, Pennsylvania, Tennessee, West Virginia, Wisconsin; and in the case of *Wright v. Curtin,* 137 Ill. App. 267, the court said:

"While we do not deem it necessary to the decision of this case to go so far as the Pennsylvania Court, or to decide whether or not the effect of insolvency in this jurisdiction is as declared in the Criswell case, yet the basis of stating the account between the association and the borrower pronounced in Strohen v. Franklin Sav. Fund & Loan Ass'n., 115 Pa. St. 273, appealing to us as it does, as being most in keeping with equity and right as a fair and just method, we are constrained to adopt it as the method here to be pursued". 1914B Ann. Cas. pp. 1269-1272.

In the case at bar, the learned trial judge held:

"That defendant Stephen O'Neill, who on March 13, 1931, was a member and shareholder of Western Savings & Loan Association, whose shares were then

of the withdrawal value of two hundred dollars ($200) and who on that date borrowed of and from such association the sum of one hundred eighty dollars ($180) gave the association his promissory note of that date for that sum with interest thereon and pledged to the association his aforesaid shares of stock as collateral security for the payment of his aforesaid note, is not entitled to set off against his debt on his said promissory note the whole or any part of the value of his shares of stock, nor to have his note cancelled and returned to him, but that the relationship of debtor and creditor does not exist as between a savings and loan association and its shareholders in so far as the stock transaction between them is concerned, and that defendant Stephen O'Neill, as a borrowing member, has no debt owing to him by the association on account of his shares of stock to be set off against his debt to the association on his promissory note''.

This is in accordance with the Pennsylvania rule, which we adopt, and hence no error was committed in so holding.

 Paragraph 5 of the judgment of the circuit court is as follows:

"That defendant Ernest C. Lehrer is entitled to have repaid to him immediately by plaintiff the sum of forty-two dollars ($42) by him paid to or deposited with plaintiff as statutory receiver or liquidator of Western Savings & Loan Association on his subscription for shares of stock in the association, such payment having been made on May 29, 1931, as set forth in the sixth cause of suit; that the sum so paid did not become a part of the assets of the association in the hands of plaintiff as such statutory receiver or liquidator for liquidation, and that plaintiff is not entitled to apply such payment on the stock subscription of said defendant''.

Plaintiff seeks a ruling of this court upon that phase of the case. Insolvency of a building and loan

association relieves a stockholder from payment of dues and determines loan contracts; the only thing left to be done being to wind up its affairs so as to do equity to creditors, debtors and stockholders. *Trustees of Mut. Loan Ass'n. v. Tyre,* 26 Del. 88 (81 Atl. 48). The business of a building association ceases with the appointment of a receiver. Nothing remains but liquidation. The receiver has no authority to collect dues maturing after his appointment. *Strohen v. Franklin Saving Fund & Loan Ass'n.,* 115 Pa. 273 8 Atl. 843). Plaintiff, as statutory receiver, having no authority to collect such dues, has no right to retain those paid to him during the period of the association's insolvency, and, hence, the order of the trial court, directing plaintiff to return such sums as were so paid, is approved.

Plaintiff also suggests that this court should pass upon the constitutionality of a certain provision of the statute referring to his duties as statutory receiver of building and loan associations. We are unwilling to do so without the citation of any authority and none appears in either brief herein.

The judgment of the circuit court is affirmed.