LUNATI *et al. v.* PROGRESSIVE BUILDING & LOAN ASS'N.

*(Nashville,* December Term, 1933.)

Opinion filed January 13, 1934.

Jos. HANOVER, C. L. MARSILLIOT, and CHAS. M. BRYAN, all of Memphis, for appellants.

BATES, SHEA & FRAZER, W. P. McDONALD, and A. B. KNIPMEYER, all of Memphis, for appellee.

MR. JUSTICE COOK delivered the opinion of the Court.

The bill was filed by Louis Lunati and John P. Lunati on behalf of themselves and other shareholders of the association. It was stated in the bill that on January 26, 1932, the complainants gave notice, as provided by section 3, chapter 136, Pub. Acts of 1919, of their intention to withdraw from the association, and thereafter demanded payment of $890.94 to Louis Lunati and $800 to John Lunati, which defendant failed or refused to pay.

It appears from an exhibit to the bill that the assets of the association amounted to $1,914,172.10, including, among other items, $1,375 loaned on real estate, $43,284.-80 loaned on installment stock, notes receivable $237,-

036.64, first mortgage real estate bonds $26,591, real estate sold on contract $29,013.20, real estate on hand $71,885.82, interest and premiums due from borrowing shareholders $67,754.90, cash $29,908.75.

Beyond liabilities for installment stock, dues from borrowing members, paid-up shares, and thrift shares, the liabilities of the association are shown to be notes payable $145,000, due borrowers on loans $1,495.55, accounts payable $472.33, unrealized profits $17,468.82, surplus and reserve $83,226.80.

It was charged that the loans on real estate were made on inflated values and other assets were carried on the books at excessive valuation. Also that the cash on hand included a claim for deposits in a defunct bank with no reasonable prospect of collecting it.

It was charged in an amended and supplemental bill filed October 7, 1932, that the association was operating at an annual loss of $43,000, had borrowed $150,000, and was paying $5,000 a month interest on the loan, and pledged $800,000 of its assets to secure the loan. In an amended and supplemental bill filed January 11, 1933, it was charged that the demands of the withdrawing shareholders had increased to more than $440,000 and the board of directors had ordered a suspension of dividends. It was alleged that the association was insolvent, that it was impossible for it to function for the purposes designed and for these reasons the complainants prayed for the appointment of a receiver and liquidation of the corporation under the orders of the court.

The association answered denying the charge of insolvency and mismanagement. It admitted the receipt of notice from complainants of their intention to withdraw and also admitted their right in due sequence to pay-

ments of sums due them as withdrawing shareholders, but explained that shareholders were induced by extraneous and improper influences designed to incite them to withdraw and make unreasonable and unexpected demands upon the association, which made it impossible to immediately pay complainants and other withdrawing shareholders.

When presented on December 5, 1932, the chancellor refused to grant complainants' motion for the appointment of a receiver but passed the case until after the regular meeting of shareholders, with the statement that, upon their failure to act upon the question of whether the association should be liquidated, he would determine whether it was proper to appoint a receiver. Thereafter, on March 21, 1933, the defendant moved to dismiss the bill and intervening petitions in so far as they sought the appointment of a receiver, because the Legislature, by chapter 19, Pub. Acts of 1933, prescribed an exclusive mode of procedure without following which no receiver could be appointed. The chancellor sustained defendant's motion and dismissed the bill. The complainants appealed and through assignments of error insist that the Act of 1933 is void; that it is retrospective in effect, contrary to article 1, section 20, of the Constitution; it deprived complainants of vested rights without due process of law, contrary to article 1, section 8, of the Constitution, and is an attempted assumption by the Legislature of the judicial power, contrary to article 6, section 1, of the Constitution. Provisions of the Constitution of the United States, imposing, in substance, similar limitations upon the legislative power are relied on by complainants.

Chapter 19, Acts of 1933, is comprehensive. With only slight variations, it is a re-enactment of chapter 114, Acts of 1895, and chapter 126, Acts of 1897, carried into sections 2159 and 2165 of Shannon's Compilation of the Statutes. These acts were omitted from the Code of 1932.

As in section 2165 of Shannon's Code, section 12 of chapter 19 of the Pub. Acts of 1933 empowers the commissioner of insurance and banking to intervene upon disclosure of illegal practices or insolvency, and, as in the former statute, provides that shareholders cannot bring suit to wind up the affairs of an association or for the appointment of a receiver until the commissioner, upon request of such shareholders, has made an examination to determine the question of solvency or insolvency. And it provides that the commissioner cannot be required to cause an examination unless the applicants for it give security to cover the expense of making the examination in the event the charge of mismanagement or insolvency is groundless.

Section 13 of chapter 19 of the Pub. Acts of 1933 provides:

"The provisions of this Act in reference to the liquidation of Building and Loan Associations shall be exclusive, and other laws of this State providing for the receivership of corporations shall have no application to Building and Loan Associations. Where an Association is found to be insolvent or its affairs conducted illegally, should the shareholders desire to continue in business but the Commissioner believes that liquidation is necessary and that the institution cannot make good the impairment of its capital, then the Commissioner shall call such facts to the attention of the Attorney General who shall make

such additional investigation as he deems proper, and is in his discretion empowered to institute any action or suit deemed necessary to bring about the liquidation of such Association; and provided, further, that any and all pending actions, brought contrary to the provisions of this Act, having for their purpose the appointment of a receiver of a Building and Loan Association in which no receiver shall have been appointed at the time this Act becomes effective, shall be abated upon the application of such Association against whom such action is pending or any stockholder of the same, and no relief shall be hereafter granted except in accordance with the provisions hereof.''

Subsequent provisions of this section regulate and control the course of procedure for the appointment of receivers for building and loan association, as well as regulate the receiver's compensation and define his powers. The object of the statute is to conserve the rights and interests of shareholders in these associations created to meet the wants and accommodate the situation and needs of wage-earners and others of small means, and permit them to convert their small periodical incomes into an effective and usable bulk.

Unlike ordinary corporations where paid up capital stock is necessary to their continued corporate existence, building and loan associations start without paid-up capital and accomplish their purpose through small periodic payments by members on the shares subscribed to by them, and by the gains from premiums paid by borrowing shareholders, and by the interest on loans to members. Shareholders in these associations, at least many of them, are borrowers, and the organization is so designed that the bulk resulting from their small, regular

contributions will in time mature their stock and extinguish their loans.

The appointment of a receiver upon charges of insolvency or mismanagement would put an end to the plan, and liquidation would necessarily follow. Borrowing members would lose whatever benefit might otherwise result from their dual capacity of shareholders and debtors. They would be required to immediately pay debts which they intended to meet 'by small partial payments to mature their stock, together with unpaid accrued interest. Both borrowing and nonborrowing stockholders would lose the accretions that would result from maturity of the plan, and would be burdened with all expense incident to winding up the business of the association.

For these reasons, building and loan associations are the peculiar objects of public interest and necessary subjects of supervision by the state and properly invite the enactment and application of regulatory statutes like the Act of 1933. The only question is whether the retroactive provisions of this act can affect complainants' right to maintain the action for the appointment of a receiver, begun before enactment of the statute. While the act prescribes an exclusive remedy for the appointment of a receiver and strips courts of the power to sequester the assets in pending suits, it does not affect complainants' remedy to recover the value of their stock by action at law or equity. The courts are left open to them for that purpose. They had perfected their right as withdrawing members by notice as provided by statute, and when that was done they became creditors of the association to the amount due them as withdrawing shareholders. In the absence of a forbidding statute or by-law, and

there is none, complainants can enforce their right as creditors by action pursued to judgment and execution. Endlich on Building and Loan Associations, sections 110, 111. See *United States Building & Loan Association* v. *Silverman,* 85 Pa., 394.

The several constitutional provisions relied upon by complainants to avoid the effect of this statute do not guarantee to them a particular or peculiar remedy for enforcement of their rights. It is true that laws existing at the time and place of contract enter into and form a part of the contract. This embraces laws which affect the validity of the contract and the construction and enforcement of it. The idea of nonimpairment and remedy is inseparable because a means of enforcing the contract is as material to the right as the contractual obligation and so any impairment of the obligation of the contract itself or destruction of the right to enforce it falls within the prohibition of the Constitution. But the Constitution does not forbid a change in the remedy which does not deprive one of the contractual right nor prevent enforcement of the right. If the right to enforce is left effective, the Constitution is not violated. *State* v. *Bank,* 3 Baxt., 395.

The appointment of a receiver is merely incident and auxiliary to a pending action. It is but a means of sequestering the debtor's property before judgment so that it may be held and kept subject to the suitor's claim. It is not a remedy annexed to the right to enforce the contract, and the Legislature could, in the exercise of the police power, enact a law like that of 1933 to provide a simple, speedy, economical, and exclusive means of ascertaining the financial condition of a building and loan association to the end of determining whether or not it is

insolvent; and, if found insolvent, upon examination, the Legislature could also provide measures for the appointment of a receiver under a plan designed to protect the interests of all the shareholders. Otherwise innocent and quiescent members of such an association could be deprived of their accumulated fund by the fear and panic that would be engendered by a heated judicial inquiry to determine the question of solvency.

It is clear, therefore, that no right to pursue their purpose to have a receiver appointed for the association inured to complainants as a part of their contract. While they have a right to enforce their contract and that right cannot be impaired, they have no vested right in a particular remedy. *Nelson* v. *North,* 1 Overt., 33; *Swope* v. *Jordan,* 107 Tenn., 166, 64 S. W., 52; *Gardenhire* v. *McCombs,* 1 Sneed, 83; *Brandon* v. *Green,* 7 Humph., 130; *McAdoo* v. *Smith,* 5 Baxt., 695. Their remedy in an action to recover judgment, followed by execution, was left open to them unhampered and unimpaired.

We find no error. Affirmed.