ANNA W. GILBERT *vs.* BEACON HILL CREDIT UNION &
another.

MAURICE A. GILBERT *vs.* SAME.

Suffolk.   March 10, 13, 1933. — September 11, 1934.

Present: RUGG, C.J., WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Credit Union. Evidence,* Presumptions and burden of proof. *Practice,
Civil,* Findings by judge, Report.

Where a shareholder in a credit union gave to it notice of his intention
to withdraw the money which he had paid in for his shares, but was not
paid such money after the date upon which the notice became effec-
tive, it was proper to rule, at the trial of an action by him against
the credit union for such money, "that while 'the amounts paid in
on shares . . . by members who have withdrawn . . . shall be
paid to them in the order of withdrawal . . . but only as funds there-
for become available,' any reliance upon this provision [of G. L. (Ter.
Ed.) c. 171, § 28] is an affirmative defence to be pleaded and estab-
lished by the defendant."

At the hearing without a jury of the action above described, it appeared
that the plaintiff gave the defendant the ninety-day notice, required
by the defendant, of his intention to withdraw his money. The trial
judge stated in a report to this court that he was unable to find that,
at the time when such notice was given or thereafter, the defendant
was insolvent or that the defendant did not have sufficient funds avail-
able to meet the demand in the order of withdrawal; and that he found
that, about a year after the plaintiff's notice became effective, the
defendant's shareholders voted, in the manner required by G. L. (Ter.
Ed.) c. 171, § 29, to liquidate the defendant, but that there had not
been a sufficient vote of recommendation by the defendant's directors.
*Held,* that

(1) On the date when the plaintiff's notice became effective, his
cause of action for the money which he had paid in to the defendant
arose, and he ceased to be a shareholder and became a creditor of the
defendant for such money;

(2) As a creditor of the defendant, the plaintiff would be entitled
to priority over the shareholders;

(3) It was proper to refuse to rule, as requested by the defendant:
"A withdrawing member of a credit union cannot obtain an advantage
or priority over his fellow members by instituting suit by attachment
of the funds and proceeding with suit after liquidation has been voted
by the members of the credit union."

This court, upon a report by a judge of the Superior Court, can consider
only such matters as were intended to be reported.

Two ACTIONS OF CONTRACT against Beacon Hill Credit Union. Writs dated October 2, 1931, and subsequently amended by adding the commissioner of banks as a party defendant.

The actions were heard together in the Superior Court by *Weed*, J., without a jury. Material facts found by him are stated in the opinion. He found for the plaintiffs in the sums, respectively, of $500 with interest and of $1,470 with interest; and reported a ruling and a refusal to rule . for determination by this court, as described in the opinion.

*J. Schneider*, (*W. Aronoff* with him,) for the defendant.

*J. E. Hannigan*, (*J. J. Tutun* with him,) for the plaintiffs.

DONAHUE, J. Each of the plaintiffs was a shareholder in the defendant credit union. They gave notice of their intention to withdraw the sums of money which they had paid to the union for their shares and, after receiving a portion in instalments, brought these actions at law to recover the balance. The cases were tried together before a judge of the Superior Court sitting without a jury. The judge found in favor of each plaintiff and made a finding of facts. At the request of the defendant he reported the cases for determination by this court on the pleadings and his findings of fact. The report recites that it presents only two stated questions of law and that the judge's findings contain all the material facts necessary to the decision of those questions.

The defendant is a corporation organized as a credit union under G. L. (Ter. Ed.) c. 171. In 1928 each plaintiff applied for membership in the union and in that and the following year the plaintiff in the first case paid a total of $1,000 and the plaintiff in the second case a total of $2,000 to the defendant corporation for shares in the defendant corporation which had a par value of $5 per share. Moneys paid to a corporation organized as a credit union for shares may be withdrawn, and on February 26, 1930, the plaintiffs gave due and adequate notice of intention to withdraw all the money that had been paid by each to the corporation for shares, and were told that they would have to wait ninety days. The officers in charge of the defendant's

business had with the knowledge of the directors adopted the general, though not uniform, practice of requiring ninety days' notice from shareholders intending to withdraw the amounts which they had paid to the corporation for their shares. Before February 26, 1930, and afterwards, many shareholders demanded their money which they had paid to the defendant for their shares or as deposits. In some instances where small amounts were involved payment was made by the defendant's officers or agents on demand without requiring a ninety-day notice of withdrawal of money paid for shares. In other instances, where members had pledged their shares for loans from the defendant, their accounts, on demand, were adjusted by charging off the amount of the loans against the shares or by paying members the excess of the amount of their shares above the amount of the loans. Partial payments were made to certain members who had demanded their money, not, however, " 'in the order of. withdrawal' or on any proportional basis but in an endeavor to satisfy as many as possible and particularly the importunate." No attempt was made to establish a schedule for payment "in the order of withdrawal . . . as funds therefor became available." No definite general policy was adopted by the directors of the corporation and the matter of withdrawals was left to the discretion of the office force. The defendant contended at the trial that it was insolvent when the plaintiffs gave notice of their intention to withdraw. As to this the judge found: "Giving full weight to the defendant's evidence, it does not appear either on February 26, 1930, or at any time thereafter up to the time when these actions were brought [which was October 2, 1931] that the assets of the defendant were insufficient to pay its deposits and debts to others than its members in full. . . . it did not appear definitely how much . . . [of the defendant's liability for shares] was due members who had withdrawn. Upon all of the evidence I am unable to find that the defendant was insolvent at the time when the plaintiffs' demands were made." He also found that "Because of the method in which the business was handled, I am unable to find from

the evidence that 'at no time after the said demand was made by the. plaintiff[s], did the defendant corporation have sufficient funds available to meet the said demands in the order in which they were made' as alleged" in the defendant's answers.

After a careful reading of the report we are unable to agree with the present contention of the defendant, that there was no basis for certain of the findings of the judge. This is a report of actions at law, and since it does not appear that the subsidiary findings of fact with permissible inferences therefrom were insufficient as matter of law to warrant the ultimate findings of fact, those findings must stand. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143. *Commercial Credit Corp.* v. *Commonwealth Mortgage & Loan Co. Inc.* 276 Mass. 335, 340.

The first of the two questions reported is the correctness of the judge's ruling "that while 'the amounts paid in on shares . . . by members who have withdrawn . . . shall be paid to them in the order of withdrawal . . . but only as funds therefor become available,' any reliance upon this provision is an affirmative defence to be pleaded and established by the defendant." The judge found that "No evidence with respect to this matter was offered by the plaintiffs, and the evidence offered by the defendant and any reasonable inference that may be drawn therefrom falls short of establishing that funds were not available on May 26, 1930, to pay the plaintiffs the amounts paid on their shares in the order of withdrawal." We cannot on the record disturb that finding. It is the contention of the defendant that the portion of § 28 of the statute, which is quoted in the judge's ruling, puts upon a shareholder, who has exercised the right positively expressed in the defendant's by-laws to withdraw the amount paid for his shares and who, failing to receive payment, has brought suit, the burden of proving that funds of the corporation had become adequate to pay in the order of withdrawal. Reasonably interpreted we do not think that the statute can be given that effect.

A corporation organized as a credit union under G. L.

(Ter. Ed.) c. 171 is formed "for the purpose of accumulating and investing the savings of its members" which may be received by the corporation either "in payment for shares or on deposit . . . ." §§ 2, 6. "The amounts paid in on shares or deposited by members who have withdrawn or have been expelled shall be paid to them, in the order of withdrawal or expulsion, but only as funds therefor become available." § 28. Each credit union may determine for itself the method by which a member shall exercise his right of withdrawal of moneys paid for shares but the statute makes it imperative that the by-laws of each union provide "The conditions on which shares may be . . . withdrawn." § 7. The provision adopted by the defendant union in its by-laws dealing with the matter of withdrawal of moneys paid for shares by its members is: "Money paid in on shares . . . may be withdrawn on any day when payments on shares may be made, but the directors of the credit union shall have the right to require a member at any time to give ninety days' notice of his intention to withdraw the whole or any part of the amount paid in by him on account of shares." Similar provisions in by-laws of corporations have been held to be valid agreements between the corporation and the shareholders under which a shareholder has the right to demand the return of money paid for shares and to maintain an action for it if payment is not made. *Atwood* v. *Dumas*, 149 Mass. 167. *Lindsay* v. *Arlington Co-operative Association*, 186 Mass. 371. See *Beacon Hill Credit Union* v. *Tutun*, 278 Mass. 592; *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 376.

The section of the statute here relied on makes no distinction between members voluntarily severing their connection with a credit union and those who may have been expelled, and no distinction between the withdrawal of amounts paid by members for their shares and the withdrawal of amounts placed by them on deposit. As to amounts paid in for either purpose the corporation is an agency for managing the moneys of shareholders. Its general obligation is to pay them in full if the assets are

sufficient. See *Lewis* v. *Lynn Institution for Savings*, 148 Mass. 235, 244. This section of the statute deals not with the matter of the sufficiency of assets of the corporation to meet its various obligations but rather with the availability of funds, that is, of cash assets at any time when two or more shareholders have applied for the withdrawal of moneys which they have deposited or paid for shares. When such situation arises, as in credit unions of any great size would seem to be frequently, the statute directs the defendant to pay the applicants in order of their application out of funds becoming available for that purpose. It is manifestly a provision dealing generally with the withdrawal of any moneys in the ordinary course of business of a credit union as a going concern. Rights of priority of creditors and depositors and of equality of treatment of shareholders when in the course of liquidation it appears that there is an insufficiency of assets to pay all in full, are determined in the following section. There is nothing in the withdrawal of moneys from a solvent going credit union, as the defendant was, so far as could be found on the record, at the time when the plaintiffs' demand became effective, that threatens danger to creditors or inequality of treatment of those who continue to remain shareholders.

The promise of the defendant expressed in its by-laws to pay withdrawing members the amount they had paid for their shares was absolute in form with the sole qualification that a notice of ninety days might be required. The plaintiffs have complied with the by-law and with the defendant's requirement as to notice. We do not think that § 28 of the statute was intended to limit the power elsewhere in the statute given to credit unions (§ 7) to provide the conditions under which in the ordinary course of business withdrawals were to be made. The statute does require that the defendant make payments in the order of withdrawal and as funds become available, and, if it were established that funds were not available, that fact would excuse payment by the defendant for a time, that is, until there were available funds. The order of applications for withdrawal and the availability of funds

were matters peculiarly within the knowledge or means of knowledge of the defendant's officers. (See *Strauss* v. *United Telegram Co.* 164 Mass. 130, 133; Wigmore on Evidence [2d ed.], § 2486.) We do not find in the section of the statute relied upon by the defendant an intention to put upon shareholders, who, in the exercise of the right expressed in the by-law, have given proper notice of intention to withdraw their funds and who, failing to be paid, have brought suit, the burden of proving the order in which requests for withdrawal by other shareholders had been made or the fact that funds had become available. The judge rightly ruled that the burden was on the defendant.

The second of the two questions presented by the report is the refusal by the trial judge to give the following ruling requested by the defendant: "A withdrawing member of a credit union cannot obtain an advantage or priority over his fellow members by instituting suit by attachment of the funds and proceeding with suit after liquidation has been voted by the members of the credit union." The request seems to assume that the plaintiffs have continued to remain members of the union, whereas the effect of the judge's findings is that they accomplished a withdrawal from membership at the expiration of a period of ninety days following the giving of notice of their intention to withdraw. The correctness of the findings of fact relating to withdrawal from membership is not presented by the report, which by its terms brings before us only two stated questions of law and by agreement of the parties contains "all the material facts necessary to the decision" of those questions. The plaintiffs' withdrawal from membership having become effective on May 26, 1930, and it not being proved that funds were not available to pay their claims, they became creditors of the defendant. On the subsidiary facts found by the judge his ruling that their causes of action then arose was correct. See *Beacon Hill Credit Union* v. *Tutun*, 278 Mass. 592, 595. Nothing which happened after that time changed that status. A year later the liquidation of the corporation was undertaken by its members under G. L. (Ter. Ed.) c. 171, § 29. That

statute prescribes that in order to liquidate a credit union there must be first a recommendation by two thirds of the board of directors that the corporation be liquidated and second that there be a two thirds vote of the members to that effect at a meeting specially called for the purpose. The judge found that there was such a vote by the shareholders, but that there had not been a recommendation by a requisite number of the board of directors. The plaintiffs as creditors of the union in a liquidation under the statute would be entitled to priority over the shareholders. There is no finding that the assets were not sufficient to pay all deposits and debts and the obligation to the shareholders of the corporation as well. The institution of the plaintiffs' suits by attaching funds accomplished no other or greater priority over shareholders than the plaintiffs would have in a liquidation under the statute as creditors.

The defendant has argued before us various matters which are not open on this report. Among other things it has contended that the plaintiffs cannot recover because they did not present their claims to the liquidating committee; that the evidence compelled the judge to find that there were not available funds to pay the plaintiffs because of the requirement that all members applying for the withdrawal of their funds shall be paid in the order of withdrawal; and that the defendant was insolvent. The report was of two stated questions of law only. It is agreed that the findings of the judge contain all the material facts necessary to determine these questions. It does not purport to contain the evidence or facts upon which other questions, which might have been but were not raised in this report, rest. On a reasonable interpretation of the report we do not think it was intended to present for determination matters here argued by the defendant other than the two specific questions of law. No question can be considered here which was not intended to be reported. *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 384. *Crowe* v. *Boston & Maine Railroad,* 242 Mass. 389, 392–393. *Churchill* v. *Palmer,* 115 Mass. 310, 313.

Since there was no error by the trial judge in the rulings

which are reported, in accordance with the terms of the report, judgment for the plaintiff must be entered in each case upon his findings.

*So ordered.*