FUZY *v.* DEPARTMENT OF FINANCIAL INSTITUTIONS.

[No. 16,724. Filed October 23, 1941.]

*Willis C. McMahan,* of Gary, and *William A. Fuzy,* of East Chicago, for appellant.

*Thomas W. Callahan,* of East Chicago, and *John N. Stanton,* of Gary, for appellee.

STEVENSON, J.—On January 10, 1921, the appellant purchased ten shares of paid-up capital stock of the Twin City Savings and Loan Association, and on said date paid therefor the sum of one thousand dollars. The association on said date issued to him its certificate for ten shares of stock in said association, which certificate he continued to own and hold until the 24th day of October, 1931, on which date he notified the board of directors of said association that he desired to withdraw from said association, and asked that the amount due him on said stock certificate be paid to him in cash. This notice was addressed to the Twin City Savings and Loan Association, and delivered to the secretary of the association at its office in East Chicago, Indiana.

On June 2, 1937, on a petition filed by the Department of Financial Institutions of the State of Indiana, the Twin City Savings and Loan Association was declared insolvent by the Lake Superior Court; and the appellee was appointed to liquidate the affairs of the association. Following the appointment of the appellee as the liquidating agent, the appellant filed his claim for one thousand dollars, alleged to be due him on said certificate of stock. In this claim, he set forth the fact that he had given notice of his withdrawal from the association on the 24th day of October, 1931. The petition closed with a prayer that his claim be adjudged

as prior and superior to the claims and rights of stockholders who had not given notice of their intention to withdraw from said association. A similar claim was filed by the appellant and his wife, Gizella Fuzy, on paid-up stock in the amount of two thousand dollars; and these claims were consolidated for purposes of trial. No judgment has been entered by the court on this joint claim.

To these petitions, the appellee filed answers in general denial; and the cases were submitted to the court for trial. The court, after hearing the evidence, found against the appellant on his case; and judgment was entered to the effect that the petitioner take nothing by virtue of his petition, and that the petitioner is not entitled to a preference or priority over and above other shareholders in the Twin City Savings and Loan Association. A motion for new trial was filed and overruled, and this appeal has been perfected. The contention of the appellant is that the court was in error in denying the appellant a preference as a creditor over and above the claims of stockholders who failed to file notice of their desire to withdraw from the association during the period of solvency of such association.

The question, therefore, presented to this court is whether or not the appellant was entitled to a priority of payment over those shareholders who gave no notice of their intention to withdraw their holdings prior to the insolvency of the association.

At the time the appellant gave notice of his intention to withdraw from said association, there was in force and effect, in the State of Indiana, a statute, which reads as follows:

"Any stockholder, or the legal representative of any deceased stockholder, whose stock is unpledged for a loan, wishing to withdraw from such associa-

tion, may do so upon three months' notice in writing to the board of directors, when such withdrawing stockholder shall be entitled to receive the full amount of dues paid in upon the stock to be withdrawn, together with all declared dividends thereon, less all fines and other charges provided by the by-laws and a pro rata share of the losses sustained during such stockholder's term of payment." § 5085, Burns' 1926.

This statute prescribes the method by which a stock-holder may withdraw from membership in the association. When he has met the requirements of the statute, he has, in effect, withdrawn from membership, and is no longer a stockholder. If this were not the case, then the statute is meaningless. It is to be noted that payment of the amount due the withdrawing shareholder is not mentioned as a condition precedent to his withdrawal. If the stockholder has withdrawn from membership in the association, at the maturity of his notice, what, then, is his legal status, with reference to the association? Until he has been paid the amount due him, it is apparent to us that he is a creditor. By the terms of the statute, such withdrawing stockholder is, "entitled to receive the full amount of dues paid in upon the stock to be withdrawn, together with all declared dividends thereon, less all fines and other charges provided by the by-laws and a pro rata share of the losses sustained during such stockholder's term of payment." This is an amount which is capable of being made certain upon the day fixed for payment. This amount the association is obligated to pay; and the withdrawing member has no further rights or liabilities growing out of his membership in the association, if such association is then solvent. As was said by the Supreme Court of Massachusetts, in the case of *Gilbert* v. *Beacon Hill Credit Union* (1934), 287 Mass. 433, 439, 192 N. E. 25, 28, "the plaintiffs' withdrawal from mem-

bership having become effective on May 26, 1930, and it not being proved that funds were not available to pay their claims, they became creditors of the defendant. . . . Nothing which happened after that time changed that status." Similar language is used by the Federal District Court of Oregon, *In re Guardian Building & Loan Ass'n* (1931), 53 F. (2d) 412, 413, wherein the court said: "A shareholder may become a creditor of an association, as its failure to pay the matured value of his stock, or to permit its withdrawal when conditions are met, would create a cause of action and a provable claim in case of bankruptcy." In the case of *Lunati* v. *Progressive Building & Loan Ass'n* (1934), 167 Tenn. 161, 167, 67 S. W. (2d) 148, 150, the Supreme Court, in speaking of the rights of withdrawing stockholders in building and loan associations, said: "They had perfected their right as withdrawing members by notice as provided (by) statute, and when that was done they became creditors of the association to the amount due them as withdrawing shareholders. In the absence of a forbidding statute or by-law, and there is none, complainants can enforce their right as creditors by action pursued to judgment and execution." Similar language was used by the Supreme Court of Oregon, in the case of *Mott* v. *Western Savings & Loan Ass'n* (1933), 142 Ore. 344, 349, 20 P. (2d) 236, 238, wherein the court said:

> "In the case of a withdrawing stockholder, if the notice of withdrawal was given and matured while the association was a solvent going concern, he is entitled to be ranked as a general creditor, otherwise, not. Sundheim, Law of Building & Loan Associations (2d Ed.), p. 185, § 180."

In the case of *Woods* v. *Wichita Falls Building & Loan Ass'n* (1933), — Texas —, 66 S. W. (2d) 718, 720, the court said:

"When appellant's claim matured on November 29, 1931, and became enforceable, he became in a qualified sense a creditor of appellee, certainly so as far as the stockholders are concerned, the association being solvent. Law of B. & L. Ass'n by Sundheim, p. 154; *Young* v. *Stevenson*, 180 Ill. 608, 54 N. E. 562, 72 Am. St. Rep. 236; *Holyoke Ass'n* v. *Lewis*, 1 Colo. App. 127, 27 P. 872; *Englehardt* v. *Fifth Ward Ass'n*, 148 N. Y. 281, 42 N. E. 710, 35 L. R. A. 289; *Enterprise Bldg. & Loan Soc.* v. *Bolin*, 12 Colo. App. 304, 55 P. 740. And if the association was then a solvent going concern, he is entitled to be ranked as a general creditor."

The prevailing rule, as gathered from the authorities above quoted, was reiterated by the Superior Court of Pennsylvania in the following language:

"The decisions are clear that on the distribution of the assets of a building and loan association creditors, whose claims did not arise from the ownership of stock in the association, are entitled to be paid before 'creditors' whose claims arose out of ownership of stock; and that no preference exists among the claims of stockholders, except that where stockholders have withdrawn from the association while it is solvent and it subsequently becomes insolvent because of losses on investments made after such withdrawals, such stockholders occupy a position as 'creditors' superior to non-withdrawing stockholders, who by their representatives in charge of the association brought about its insolvency; . . ." *In re Commuters Building & Loan Ass'n* (1939), 134 Pa. Sup. Ct. 520, 523, 4 A. (2d) 615, 616.

It has, accordingly, been held by our court that such a withdrawing stockholder, upon the maturity of his notice, may maintain an action to enforce the payment of this obligation; and, in such action, such withdrawing member is "not required to aver in his complaint, as a condition precedent to his right of action, that there were funds in the treasury with which to pay the amount due on the withdrawal

of his stock." *Huntington County, etc., Assn.* v. *Emerick* (1899), 23 Ind. App. 175, 55 N. E. 106. He may reduce his claim to a judgment; and, if he does so, it is clear to us that all matters respecting his membership in the association have been concluded. See Braver on Liquidation of Financial Institutions, § 1300, p. 1442.

It is apparent from these authorities that the appellant was entitled to have his claim allowed as preferred over and above the claims of nonwithdrawing shareholders, unless the Twin City Savings and Loan Association was insolvent at the time of the maturity of his notice. The rule is well settled that, "when an association is insolvent, the giving of a notice of withdrawal will not change the relation of the member to the association so as to place him in the position of a creditor rather than a stockholder." *Mott* v. *Western Savings & Loan Ass'n, supra,* and cases cited: 9 Am. Jur., p. 181, § 94; Annotations, 98 A. L. R., p. 112; Liquidation of Financial Institutions, Braver, p. 1441. In fact, our court has held that: " 'The right to withdraw does not exist after the association is known to be insolvent.' " *Bingham* v. *Marion Trust Co.* (1901), 27 Ind. App. 247, 264, 61 N. E. 29.

In the light of these rules, we are next confronted with the problem of determining who has the burden of proof as to the solvency or insolvency of the association at the time of the maturity of the notice of withdrawal. The appellee contends that if the appellant is to establish his status as a creditor, he must not only prove compliance with the statute which permits his withdrawal from membership, but he must also prove that the association was solvent at such time. The appellee contends that the appellant has not discharged this burden.

The facts in this case disclose that the appellant's notice of withdrawal was given on the 24th day of October, 1931. The Twin City Savings and Loan Association continued in business until June 2, 1937, when the appellee was appointed to liquidate its affairs. Following the maturity of his notice, the appellant talked to the secretary and members of the board of directors of the association from time to time about the payment of his claim, and was informed that his claim had been listed in the order of its filing and that withdrawals prior to his in point of time were being paid.

The evidence further discloses that the appellant filed suit against the Twin City Savings and Loan Association in the Superior Court of Lake County to recover the amount due on this obligation. To this action, the Twin City Savings and Loan Association filed an answer in which it was admitted that the board of directors of said association had received notice of the appellant's withdrawal. The answer alleged that many similar demands by withdrawing stockholders were on file, and that they were being paid in the order in which said notices of withdrawal were filed with said association. The answer alleged that the notice of withdrawal, as filed by the appellant, was about thirtieth on the list, but that the time for payment of his claim had not yet matured, due to the fact that the demands of withdrawing members exceeded the funds applicable for their payment. This action was not prosecuted to judgment, however, and was dismissed after the appointment of the appellee as liquidating agent.

Generally speaking, the burden is upon a stockholder, seeking to show that his status has been changed to that of a creditor, to allege and prove the essential fact that the association, if admitted to be insolvent at the time distribution is sought, was

not insolvent when the alleged right of payment accrued, § 1299, Braver on Liquidation of Financial Institutions. This rule does not preclude recovery, however, where the evidence shows that many years have elapsed from the time of withdrawal to the time of the judgment, which declared the association insolvent. Financial institutions, organized and doing business under the laws of this state, are required to show a solvent condition before they begin transacting business. They must report their condition periodically to governmental supervising agencies; and they are examined periodically by those agencies, for the purpose of ascertaining whether they are solvent. And upon discovery of insolvency, the examining officers are required, by law, to immediately close the institution. For more than five years after this withdrawal, the Twin City Savings & Loan Association continued to transact business under the state's supervision; and it is our opinion that such facts are sufficient to establish a *prima facie* case in favor of the creditor who seeks to have his claim allowed as preferred over the claims of nonwithdrawing shareholders. In such a case, if a creditor's right to priority over the claims of nonwithdrawing stockholders is to be defeated, the burden should be upon the stockholders who have continued to operate the association to overcome such *prima facie* showing, by proving such insolvency as would prevent the withdrawing member from enforcing the right which the statute sought to confer upon him.

The evidence in this case wholly fails to disclose any circumstances from which the court could reasonably infer that the Twin City Savings and Loan Association was insolvent in January, 1932, at the time the appellant's notice of withdrawal matured. The fact that the association was found to be

insolvent on June 2, 1937, is not in and of itself evidence of insolvency for any substantial period prior to that date. *Walter* v. *State* (1935), 208 Ind. 231, 195 N. E. 268.

The appellant having made a *prima facie* showing of all facts necessary to confer upon him the status of a preferred creditor as against the claims of non-withdrawing shareholders, it is our opinion that the court was in error in refusing to allow his claim as preferred.

The appellee further contends that the notice, given by the appellant of his intention to withdraw from the association, was wholly insufficient, for the reason that it was not served upon the board of directors, as the statute requires. The evidence in this case discloses that the appellant's notice was in the form of a letter, dated October 24, 1931, and addressed to "Twin City Savings & Loan Association, 4759 Alexander Avenue, East Chicago, Indiana." This notice was delivered to the secretary of the association, who was also a member of the board of directors. The record further discloses that this notice was received and placed on file by the association, and that the directors had knowledge of this fact. Under these circumstances, we think that the notice was sufficient to meet the requirements of the statute. 9 Am. Jur., p. 115.

For the reasons above stated, it is our opinion that the court erred in overruling the appellant's motion for a new trial. The judgment of the trial court is reversed, and the court is directed to sustain the appellant's motion for a new trial.

Judgment reversed.

Bedwell, J., dissents.

## DISSENTING OPINION.

BEDWELL, J.—I feel that the questions involved in this case are new in the state of Indiana, and that they are of sufficient importance that I should set forth the reasons for my dissent from the opinion of the other members of the court. I differ with them in two particulars. First, as to the priority rights of a withdrawing stockholder of a building and loan association over continuing stockholders. Second, as to the existence in the record of any evidence showing the solvency of the building and loan association at the time that the appellant gave notice of his intention to withdraw or at the time of the maturity of such notice. Nor do I believe that a presumption or inference of the solvency of the building and loan association, at a particular time, can be properly drawn from the fact that several years have elapsed from the time of withdrawal to the time of judicial determination of insolvency, or from the fact that a building and loan association was permitted by state departments to continue its operations.

The majority of the court thinks that a withdrawing stockholder is entitled to priority in payment over continuing stockholders if the building and loan association was solvent at the time notice of withdrawal was given and matured, despite the fact that the association became insolvent before it was required to pay the withdrawing stockholder and before any payments had been made to him. They reached this conclusion by determining that his status changed from a shareholder to a creditor as of the date of the maturity of his notice. Then, if insolvency occurs thereafter, as a creditor they hold that he is entitled to priority over continuing stockholders. I do not agree with this view. I think the statute, which is quoted in the majority opinion and which declares the rights of the stockholder upon

withdrawal, is applicable under conditions where a relative proportion of the assets of the building and loan association will remain for the benefit of continuing stockholders; and that it was not the intention of the Legislature that the manner and order of payment provided for therein should be the basis for distribution where the association becomes insolvent prior to actual payment. If the statute and the provisions thereof concerning order of payment remain applicable after insolvency has been declared, the practical result is to permit those who are a part of the management, or who have information from the management and who know about the condition of the building and loan association, to give their notices and thus obtain a preferment over the others who are not advised. I do not think that this was the intention of the Legislature.

Under the provisions of our statute (§ 5085, Burns' 1926), which are quoted by the court, the withdrawing stockholder is entitled to the proportionate part of the assets of the association represented by his shares. He is entitled to receive "the full amount of dues paid in upon the stock to be withdrawn, together with all declared dividends thereon, less all fines and other charges provided by the by-laws and a pro rata share of the losses sustained during such stockholder's term of payment." It will be noted that the shareholder is not entitled to receive the full amount of his contribution to the building and loan association, for his pro rata share of all losses during his term of payment are to be deducted. This, within itself, indicates that it was legislative intent that equality exist as between the members of the association; and there is no reason to believe that if distribution among shareholders was required because of insolvency, that it was contemplated that a particular shareholder, who had given

a prior notice, should be paid before another shareholder.

This matter of priority as between withdrawing and continuing stockholders is discussed in a number of cases in other jurisdictions. They are annotated in 49 L. R. A. (N. S.) 1143 and 98 A. L. R. 116. In 9 Am. Jur., Building and Loan Associations, § 94, p. 181, the text summarizes and discusses the decisions in other jurisdictions:

> "Generally speaking, holders of withdrawn or matured stock have no priority over continuing stockholders if the association is insolvent at the time of withdrawal or maturity. They are entitled only to a pro rata share in the distribution of its assets. According to the weight of authority, this rule is not changed by the fact that the notice of withdrawal preceded the entry of a winding-up order or a judgment declaring the insolvency; . . . Although this rule applies most clearly where the association becomes insolvent before the withdrawal or maturity of the stock is complete, the majority of cases hold that notwithstanding the fact that the withdrawal or maturity of the stock is complete before insolvency, except for payment, no preference will be allowed where the association becomes insolvent before payment of such stock is made."

I agree with the majority that the burden of proof was upon appellant to establish his status as a preferred claimant. It must be remembered that the trial court determined that the appellant had not established his right of priority; and, upon appeal, we have no right to overthrow the determination of the trial court, unless the evidence was without conflict and but one reasonable inference could be drawn therefrom. *Haughton* v. *Aetna Life Ins. Co.* (1905), 165 Ind. 32, 73 N. E. 592. From my examination of the record, I am wholly unable to find any evidence from which an inference

could be drawn that the building and loan association was solvent at the time appellant gave notice or at the time such notice matured. There is evidence in the record from which the inference could be drawn that it was not solvent at that time. The record shows that appellant filed his notice of withdrawal in October of 1931; that at that time there were twenty-nine or thirty prior notices filed; that the association paid on these notices in order until it went into liquidation, but that it never had sufficient money on hand to make any payment upon the notice of withdrawal of appellant prior to such time. It further shows that appellant tried to get a clerk of the building and loan association to repay him the amount that he had paid for his stock and that he told her that he wanted to withdraw his stock and get paid off before it was too late. There is no evidence in the record concerning the amount of stock, the contributions made by different stockholders, the amount of losses, dues, fines, or any other facts from which it could be determined whether or not the association could pay back its members the amount of their contributions, dollar for dollar.

The insolvency of a building and loan association is *sui generis*. It is such a condition as reduces the available and collectable assets below the level of the stock already paid in, and makes it impossible for the association to pay back to its stockholders the amount of their contributions. It does not consist in the inability of the association to pay its available debts, but merely in its inability to satisfy the demands of its own members. Such inability must result from losses in the capital paid in by its members. 9 Am. Jur., Building and Loan Associations, § 86, p. 174; 12 C. J. S., Building and Loan Associations, § 110, p. 528. There is not a single item of evidence in the record from which

it can be determined when the condition of the building and loan association became such that it could not pay to its members the amount of their contributions, dollar for dollar. In the absence of such evidence, this court presumes that the association was solvent and that it could pay its members the amount of their contributions, dollar for dollar, upon the date that appellant gave notice of withdrawal or upon date of maturity of such notice, because of the period of time that had elapsed between the giving of such notice and a judicial determination of insolvency. The notice was given on October 24, 1931, and there was a judicial determination of insolvency on June 7, 1937. I do not believe that such presumption can take the place of evidence nor do I believe that it is a proper presumption to draw.

The mere fact that the Department of Financial Institutions of the State of Indiana permitted the building and loan association to operate for four years after the department was established does not, to me, indicate any condition of solvency in 1931. It is a matter of common knowledge that in 1931, and 1932, all building and loan associations and other financial institutions were adversely affected by economic conditions. The value of the assets of such institutions was so depreciated that in a great number of cases, if liquidation had been forced, the amount obtained would not have been sufficient to pay the liabilities. Yet despite this fact, thousands of these institutions were permitted to operate; financial assistance was given through legislation by the federal government so that they would not be required to close their operations; and then because of an increase in the value of their assets they became solvent where they had prior to such time been insolvent. To my mind, the fact that a building and

loan association, which had been operated a great number of years, was judicially declared insolvent in 1937, is a strong indication that it was insolvent in 1931, and 1932, for during the period from '32 to '37, the value of real estate was increasing and this was true generally of the other assets of financial institutions.

It seems clear to me that the appellant wholly failed to establish his rights to preference in payment and that the decision of the court below should be affirmed.

NOTE.—Reported in 37 N. E. (2d) 24.